**Marianne QUINN, Plaintiff,**

v.

**THOMAS H. LEE COMPANY and Thomas H. Lee, individually and jointly, and Diet Center Worldwide, Inc., and United States Fidelity and Guaranty Company and Francis Teti, CPA, jointly and severally, Defendants.**

No. 95 Civ. 2799(JES).

United States District Court,
S.D. New York.

Aug. 24, 1999.

Marianne Quinn, Culver City, CA, Plaintiff, pro se.

Paul, Weiss, Rifkind, Wharton & Garrison, New York, New York, Mark A. Alcott, of counsel, for Defendants Thomas H. Lee Company and Thomas H. Lee.

Hutchins, Wheeler & Dittmar, P.C., Boston, Massachusetts, James A. Kobe, of counsel, for Defendants Thomas H. Lee Company and Thomas H. Lee.

Esanu Katsky Korins & Siger, New York, New York, Adrienne B. Koch, of counsel, for Defendant DCWI.

Hills Betts & Nash, New York, New York, Peter J. McHugh, of counsel, for Defendant USF & G.

Bivova & Cohen, P.C., New York, New York, Henry D. Nelkin, of counsel, for Defendant Francis Teti.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Marianne Quinn commenced the instant action against defendants Thomas H. Lee Company and Thomas H. Lee ("Lee Defendants"), Diet Center Worldwide, Inc. ("DCWI"), United States Fidelity and Guaranty Company ("USF & G"), and Francis Teti ("Teti") (collectively "defendants"). This action arises from the termination of two of plaintiff's Diet Center, Inc. ("DCI") franchises. She alleges claims of conspiracy, breach of contract, negligence, and breach of fiduciary duty. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants individually move for summary judgment. For the reasons set forth below, defendants' motions for summary judgment are granted.

### BACKGROUND

On May 10, 1977, plaintiff entered into a written agreement with Diet Center, Inc. ("DCI") of Rexville, Idaho, a franchisor of weight loss clinics across the United

States, to establish a DCI franchise in Montgomery County, Maryland. *See* Plaintiff's Local Rule 3(g) Statement, dated July 29, 1996 ("Quinn's 3(g) Stmt.") ¶ 1; First Amended Complaint, dated December 1, 1995 ("First Am. Compl.") ¶ 8; Lee Defendants' Local Rule 3(g) Statement, dated March 27, 1996 ("Lee's 3(g) Stmt."), ¶¶ 6, 7. Approximately two years later, plaintiff and DCI entered into a second agreement giving plaintiff the exclusive franchise rights in certain areas of Westchester County, New York. *See* Quinn's 3(g) Stmt. ¶ 1; First Am. Compl. ¶ 9; Lee's 3(g) Stmt. ¶ 7. Plaintiff incorporated Diet Centers of Montgomery County, Inc. ("DCMC") and Diet Centers of Westchester County, Inc. ("DCWC"). *See* First Am. Compl. ¶¶ 8–9. She contends that she successfully operated DCMC and DCWC through June 1990, generating an income which allowed her to live comfortably in Virginia. *See* Quinn's 3(g) Stmt. ¶ 2; First Am. Compl. ¶¶ 11–12.

In 1990, plaintiff became estranged from her husband, who also had been employed at DCMC's corporate offices. *See* Quinn's 3(g) Stmt. ¶ 3; First Am. Compl. ¶ 13. Plaintiff's husband filed for divorce in the Circuit Court of Fairfax County, Virginia, and sought a ninety-day temporary restraining order to conserve their assets pending the outcome of the divorce proceeding. *See* First Am. Compl. ¶¶ 15, 18. On March 28, 1991, the Virginia Court appointed Francis Teti, a certified public accountant, as conservator and trustee of the assets of plaintiff and her husband, including DCMC and DCWC. *See* Teti's Local Rule 3(g) Statement, dated April 10, 1996 (Teti's 3(g) Stmt.) ¶ 2; Quinn's 3(g) Stmt. ¶ 6; First Am. Compl. ¶ 21. USF & G issued a receiver's bond in the amount of $250,000 to Teti. *See* USF & G's Local Rule 3(g) Statement, dated April 12, 1996 ("USF & G's 3(g) Stmt.") ¶ 3. Teti served as conservator until October 17, 1991. *See* Teti's 3(g) Stmt. ¶ 8; USF & G's 3(g) Stmt. ¶ 5.

On October 17, 1991, plaintiff and her husband entered into a Property Settlement Agreement, giving 49% interest and operational control of DCMC to plaintiff's husband, and giving the remaining 51% of DCMC and 100% of DCWC to plaintiff. *See* Quinn's 3(g) Stmt. ¶ 10; First Am. Compl. ¶¶ 24–25. Pursuant to the settlement, the order appointing Teti was rescinded. *See* USF & G's 3(g) Stmt. ¶ 4. He performed no services for plaintiff or her franchises after October 31, 1991, when he turned over copies of all related documents to plaintiff's attorney. *See* Teti's Reply Memorandum of Law, dated April 10, 1996 at 7.

In the interim, plaintiff's lawyer in her divorce proceedings, Herbert Callihan, Esq., and plaintiff's office manager at DCMC, Ingrid Bennett, incorporated Diet Centers of Potomac, Ltd. ("DCP") in February 1989. *See* Quinn's 3(g) Stmt. ¶ 14; First Am. Compl. ¶¶ 26–27. Plaintiff alleges that Callihan and Bennett conspired with her former husband, DCI, Teti, and the Lee Defendants, majority shareholders in DCI's parent company, to use the DCP franchise to launder money by causing DCI to accept large overpayments from DCP and issue credits to DCMC for nonexistent orders for merchandise. *See* First Am. Compl. ¶¶ 33–34, 37, 40. Although plaintiff alleges that DCP was operated without her knowledge or consent, plaintiff also alleges that DCI fined her for operating DCP as an unauthorized subfranchise under the franchise agreement. *See id.* ¶ 32.

When plaintiff began to make inquiries about the DCP overpayments, DCI terminated her DCMC and DCWC franchises, allegedly in order to silence her inquiries into their scheme. *See* Quinn's 3(g) Stmt. ¶ 42. On January 14, 1994, DCI terminated plaintiff's DCMC franchise agreement, citing plaintiff's breach of her franchise agreements. *See* Lee's 3(g) Stmt. ¶ 10; Quinn's 3(g) Stmt. ¶ 40. Approximately four months later, DCI terminated the DCWC franchise agreement for the same

reason. *See* Lee's 3(g) Stmt. ¶ 10. The Lee Defendants claim that they had no knowledge of or involvement in DCI's decision to terminate plaintiff's franchises. *See id.* ¶ 11.

At the time that DCI terminated plaintiff's franchises, DCI was the wholly owned subsidiary of American Health Companies ("American Health"), of which the Lee Defendants were majority shareholders. Several months after DCI terminated the DCMC and DCWC franchises, Wellness Group Acquisition Company, Inc. ("Wellness Group") purchased certain assets of DCI from a consortium of banks in a foreclosure sale held pursuant to Article 9 of New York's Uniform Commercial Code. *See* DCWI's Rule 3(g) Statement, dated April 12, 1996 (DCWI's 3(g) Stmt.) ¶ 2. Wellness Group subsequently changed its name to Diet Center Worldwide, Inc. ("DCWI"). *See id.* ¶ 2. With the exception of DCI's general counsel and one other employee, no employees, officers or directors of DCI were hired by DCWI. *See id.* ¶¶ 5–6.

Plaintiff filed the instant action on April 21, 1995. Plaintiff alleges that DCI, the Lee Defendants, and Teti conspired with DCP to deprive plaintiff of her franchises by causing DCP to make overpayments to DCI and that the defendants further conspired to terminate her franchise when she threatened to "go public" with her suspicions. In the alternative, she claims that the Lee Defendants acted negligently in permitting the overpayments, that DCI acted negligently in accepting the overpayments from DCP, and that Teti breached his fiduciary duty to plaintiff as conservator. She alleges that USF & G acted negligently in issuing a receiver's bond to Teti instead of a conservator's bond. Plaintiff further alleges that DCI breached the franchise agreements, and she seeks to hold DCWI liable for her claims against DCI as DCI's successor. Finally, she attempts to pierce DCI's corporate veil to impose liability on the Lee Defendants as majority shareholders in DCI's parent company.

USF & G has filed an indemnification cross-claim against Teti, who in turn has filed an indemnification cross-claim against the Lee Defendants and DCWI. All defendants individually filed motions to dismiss the plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6), which were subsequently converted to motions for summary judgment. *See* Order, dated April 9, 1996.

In support of their motion for summary judgment, the Lee Defendants contend that plaintiff's claim of conspiracy must fail because she has neither alleged nor offered any evidence of an independent tort committed by the conspirators. The Lee Defendants further argue that neither plaintiff's negligence nor her breach of contract claim can survive summary judgment because plaintiff has offered no basis for piercing DCI's corporate veil. Finally, the Lee Defendants argue that they are not liable under a breach of contract theory because they are not signatories to any contract between plaintiff and DCI.

In support of its motion for summary judgment, DCWI argues that because it purchased DCI's assets at a foreclosure sale, it did not agree to assume liability for DCI's obligations. DCWI further argues that plaintiff has no evidence to support her claim that DCWI's acquisition of DCI's assets constituted a de facto merger.

Teti argues that summary judgment should be granted in his favor because plaintiff's claims against him are barred by the Virginia and Maryland statutes of limitations for accountant's malpractice and for breach of fiduciary duty.

In support of its motion for summary judgment, USF & G argues that no cause of action exists for negligently writing the wrong type of bond. USF & G further argues that because plaintiff stipulated that the Virginia court rescind the order pursuant to which the bond was issued to Teti, USF & G cannot be liable to plaintiff.

In opposition to defendant's motions for summary judgment, plaintiff argues that the cancellation of her franchises by DCI gives rise to an inference of conspiracy by the defendants. Plaintiff further argues that, in light of her inability to conduct full discovery, plaintiff's negligence and breach of contract claims are not ripe for summary judgment. Plaintiff counters Teti's argument that her breach of fiduciary duty claim is time barred by arguing that the Court should apply New York's six year statute of limitations rather than the shorter Virginia or Maryland statute of limitations.

## DISCUSSION

Summary judgment is appropriate where, as here, "there is no genuine issue as to any fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties seeking summary judgment carry the burden of demonstrating the absence of any genuine issue of material fact, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Corp., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must enumerate "specific facts and circumstances supported by depositions, affidavits based on personal knowledge, and admissions" that create a rational inference in his favor and may not rely on conclusory allegations or denials. *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir.1991).

In considering defendants' motions for summary judgment, the Court views all facts and construes all rational inferences derived therefrom in the light most favorable to plaintiff. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, absent a showing of a genuine issue of material fact by plaintiff, it is appropriate for the Court to grant summary judgment for "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because plaintiff proceeds *pro se*, the Court liberally construes her submissions to the Court to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).[1]

### Plaintiff's Request for Further Discovery

As an initial matter, the Court must address plaintiff's argument that defendants' motions for summary judgment are premature because the Court has afforded plaintiff insufficient opportunity to conduct discovery. Plaintiff's argument is governed by Rule 56(f) which states in relevant part

> [S]hould it appear from the affidavits of a party opposing [summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the adverse party's opposition, the Court may refuse an application for summary judgment or may order a continuance to permit ... discovery to be had.

Fed.R.Civ.P. 56(f). In assessing the sufficiency of a Rule 56(f) affidavit, the Court considers the nature of the uncompleted discovery, whether the facts sought are reasonably expected to create a genuine issue of material fact, what efforts the affiant has made to obtain those facts, and why those efforts were unsuccessful. *See Hudson River Sloop Clearwater, Inc. v.*

---

1. At the time that plaintiff filed the instant action she was represented by counsel. On November 3, 1995, that counsel withdrew, and plaintiff proceeded *pro se* until April 15, 1996, when she retained a second attorney. On July 30, 1996, the Court granted plaintiff leave to discharge her second attorney, and plaintiff defended the instant motions for summary judgment *pro se*.

*Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985).

Plaintiff's reliance upon Rule 56(f) is without merit, as the parties have been afforded ample time for discovery, and plaintiff has failed to articulate why she has been unable to complete discovery during the time allowed or how additional discovery would demonstrate the existence of a disputed issue of material fact. As noted above, plaintiff commenced this action in April 1995. The Court initially directed the parties to complete all discovery by April 1, 1996. *See* Order, dated February 14, 1996. Thereafter, the Court granted the parties an extension to complete discovery until June 3, 1996. Plaintiff thus had more than one year during which to conduct discovery following the filing of her complaint.

In addition, in order to accommodate plaintiff following her decision to proceed with counsel for a second time, the Court held an extended conference with the parties regarding all outstanding discovery requests on June 17, 1996. The Court directed defendants to comply with certain of plaintiff's outstanding discovery requests and granted plaintiff an extension of time to file her memorandum and affidavits in opposition to defendants' motions for summary judgment. At that time, plaintiff did not represent to the Court that she needed additional discovery in order to respond to defendant's motions, which had been served upon plaintiff several months earlier. Plaintiff first raised her need for additional discovery in her memorandum in opposition to defendants' motions for summary judgment. Plaintiff does not offer any clear explanation as to

why she previously failed to obtain the discovery she now claims to be essential to her case. Although plaintiff suggests that her former counsel failed to depose a witness whom plaintiff now wishes to depose, plaintiff's failure to raise this issue at the June 17, 1996, Pre–Trial Conference suggests that this deposition is sought chiefly to delay resolution of defendants' motions.

Plaintiff has enjoyed ample opportunity through discovery to gather evidence sufficient to respond to the summary judgment motions. Therefore, because plaintiff does not articulate any basis for extending the parties' time for discovery and offers no evidence to suggest that further discovery is necessary, the Court denies plaintiff's request for further discovery and proceeds with a resolution of defendants' motions on the merits.

### *The Lee Defendants' Motion for Summary Judgment*

#### Quinn's Allegations of Conspiracy

As set forth above, Quinn claims that the Lee Defendants, DCI, and Teti[2] conspired to use DCP as a money-laundering conduit by causing DCP to make overpayments to DCI and to apply credits to non-existent orders for merchandise. When Quinn threatened to disclose the scheme, she claims that the conspirators terminated her DCI franchises to silence her. Under New York law,[3] the elements of a conspiracy claim are 1) a corrupt agreement between two or more persons; 2) an overt act; 3) intentional participation in a common scheme with a view to its furtherance; and 4) a resulting injury to plaintiff. *See Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir.1986). In addition, plaintiff must allege an underlying tort

---

**2.** Plaintiff's Amended Complaint asserts a conspiracy claim against Teti. *See* First Am. Compl. ¶¶ 36–37. However, in her Affidavit in Opposition to the Motions to Dismiss, plaintiff states that her Amended Complaint includes no causes of action against Teti for fraud or conspiracy. *See* Plaintiff's Affidavit in Opposition to the Motions to Dismiss, dated March 26, 1996 ¶ 63. To the extent that

plaintiff asserts a claim against Teti for conspiracy, the Court finds that Teti is also entitled to summary judgment for the reasons set forth herein with respect to the Lee Defendants.

**3.** The parties do not dispute the application of New York law to Quinn's conspiracy claim.

committed by the conspirators, for civil conspiracy is not by itself a cognizable tort under New York law. *See Smukler v. 12 Lofts Realty Inc.*, 156 A.D.2d 161, 548 N.Y.S.2d 437, 439 (1st Dep't 1989). A plaintiff may properly assert a conspiracy claim only to impose liability upon a defendant for the tortious actions of another with whom that defendant acted in concert. *See id.* at 163, 548 N.Y.S.2d at 439.

■ Plaintiff neither pleads nor offers any evidentiary basis for her conspiracy claim, making only conclusory allegations of a vague money laundering conspiracy. Plaintiff offers no evidence of any corrupt agreement among the defendants or even any evidence that DCP ever made any overpayments to DCI, much less that DCP was a conduit for money laundering. Nor does she offer any evidence that DCI's termination of her franchises was in breach of the franchise agreements. Moreover, Quinn's claim that DCI wrongfully terminated her franchises sounds in contract rather than tort and, in any event, is wholly unsupported by any evidence before the Court.[4] Thus, the Court must grant summary judgment to the Lee Defendants on plaintiff's conspiracy claim.

### Negligence and Breach of Contract

■ The Lee Defendants also move for summary judgment on plaintiff's claims of negligence and breach of contract. The basis for plaintiff's claim of negligence is that the Lee Defendants negligently permitted DCI to collect overpayments from DCP, or alternatively, failed to respond adequately to plaintiff's two letters to Thomas H. Lee concerning the alleged DCP overpayments. The basis for plaintiff's claim of breach of contract is that the Lee Defendants are liable as investors in DCWI for DCI's alleged breach of its franchise agreements with plaintiff.

Plaintiff's negligence and contract claims are utterly without foundation. Essential to any negligence claim is defendant's breach of a duty of care owed by defendant to plaintiff. Similarly, a contract between plaintiff and defendant ordinarily forms the basis for a breach of contract claim. Here, plaintiff alleges no relationship between plaintiff and defendant sufficient to impose a duty of care upon defendant, and plaintiff also fails to allege any contract to which plaintiff and the Lee Defendants were parties. The only connection between plaintiff and the Lee defendants is that Thomas H. Lee Company was the majority shareholder in American Health Companies, of which DCI was a wholly-owned subsidiary. Neither Thomas Lee nor Thomas H. Lee Company ever entered into any contract with plaintiff or formed any other business relationship with plaintiff. In the absence of any such connection between plaintiff and the Lee Defendants, her negligence and breach of contract claims must be dismissed.

■ Plaintiff argues, however, that she is entitled to pierce DCI's corporate veil to recover from the Lee Defendants. Under New York law,[5] to justify piercing the corporate veil, a plaintiff must show that "(i) the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Thrift Drug, Inc. v. Universal Prescription Administrators*, 131 F.3d 95, 97 (2d Cir.1997); *see also Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993). Under this standard, plaintiff must come forward with evidence that, by investing in American Health, DCI's parent company,

---

**4.** In fact, Exh. 25 to plaintiff's Affidavit in Opposition to Motions for Summary Judgment, a letter from DCI to Quinn dated January 14, 1994, suggests that Quinn's franchises were terminated because Quinn breached the franchise agreement by closing a franchise in Gaithersburg, Maryland.

**5.** The parties do not dispute the application of New York law.

the Lee Defendants dominated both the parent and the subsidiary to the extent that neither American Health nor DCI had an independent existence. *See Pritchard Services Inc. v. First Winthrop Properties, Inc.*, 172 A.D.2d 394, 568 N.Y.S.2d 775, 776 (1st Dep't 1991). Plaintiff fails to offer any evidence to support piercing the corporate veil of DCI and American Health. The only evidence before the Court indicates that DCI continued to keep its own books and records, maintain its own bank accounts, file its own tax returns, and maintain separate offices from the Lee Company. Therefore, the Court concludes that there is no evidence on which a reasonable juror could find a basis for piercing the corporate veils of American Health or DCI.

### DCWI's Motion for Summary Judgment

■ Plaintiff asserts claims against DCWI for DCI's alleged negligence and breach of contract. Because plaintiff's claims rest solely upon actions by DCI prior to DCWI's acquisition of certain of DCI's assets at foreclosure, plaintiff's claims depend upon whether DCWI assumed successor liability under Article 9 of New York's Uniform Commercial Code. *See* N.Y. U.C.C. § 9–504 (McKinney 1990). The UCC provides that a purchaser of assets at a foreclosure sale ordinarily takes such assets free and clear of any lien or interest subordinate to the security interest of the foreclosing party, provided that the purchaser acts in good faith. *See id.* There are exceptions to this rule, however, and liability may be imposed on the purchaser under certain limited circumstances, including ·

a) if the buyer expressly or impliedly assumed the seller's tort liability, b) if there was a consolidation or merger of seller and purchaser, c) if the buyer was a mere continuation of the seller corporation, or d) if the transaction is entered into fraudulently to escape obligations.

*Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983).

■ Plaintiff argues that DCWI's acquisition of DCI's assets constituted a "consolidation or merger of seller and purchaser" under New York law. A de facto merger would require, *inter alia*, that DCWI continued to use essentially the same management, physical location, and general business operations as DCI, that DCWI had essentially the same shareholders as DCI, that DCI ceased business and liquidated as soon as legally and practically possible after the foreclosure sale, and that DCWI assumed DCI's obligations such that it could continue DCI's business without interruption. *See In re Augie/Restivo Baking Co. Ltd.*, 860 F.2d 515, 520 (2d Cir.1988) (citing *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y.1977)).

Plaintiff fails to come forward with sufficient evidence that DCI and DCWI effected a de facto merger. Plaintiff points to the fact that DCI's general counsel continued to work for DCWI and that DCI ceased doing business "for all practical purposes" after the foreclosure sale. However, plaintiff offers no evidence regarding the extent of DCI's activities after DCWI's purchase of the assets at issue or the date that DCI ceased doing business, leaving DCWI's retention of ten percent of DCI's employees as plaintiff's only evidence of a de facto merger. Such limited evidence could not support a jury verdict in plaintiff's favor. The Court thus grants DCWI's motion for summary judgment.

### Teti's Motion for Summary Judgment

Plaintiff alleges that during his conservatorship Teti wasted the assets of DCMC and allowed DCP to make gross overpayments to DCI in breach of Teti's fiduciary duty to plaintiff. Teti argues that plaintiff's claims are barred by the statute of limitations.

A federal court sitting in diversity applies the substantive law of the state

where the court sits, including the forum state's statute of limitations. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Under New York law, where an action accrues outside the state, New York's "borrowing statute" requires that the Court apply the shorter of either the New York statute of limitations or the statute of limitations where the action accrued. *See* N.Y. C.P.L.R. § 202 (McKinney 1995). An exception contained in C.P.L.R. § 202 allows New York law to be applied where the cause of action accrued outside the state in favor of a plaintiff who was a resident of New York at the time of accrual. *See id.*[6]

■ Accordingly, in the instant case, the Court will apply the New York statute of limitations, the longer of the statutes of limitations claimed to be applicable to plaintiff's claims, only if plaintiff was a resident of New York at the time of accrual or if plaintiff's injury itself accrued within New York. For the purposes of determining where a cause of action accrues, an injury manifesting in economic impact is felt in the state where plaintiff resides at the time of accrual. *See Merine v. Prudential–Bache Utility Fund*, 859 F.Supp. 715, 724 (S.D.N.Y.1994), citing *Block v. First Blood Assoc.*, 988 F.2d 344, 349 (2d Cir.1993). Therefore, the Court's inquiry necessarily focuses on Quinn's residence at the time that the claim accrued.

■ At the time that plaintiff commenced this action in 1995, she was a resident of the State of New York. However, the record indicates that in 1991, when plaintiff's franchises were terminated and the cause of action accrued, plaintiff was a resident of Virginia. *See Blanco v. American Telephone and Telegraph Co.*, 223 A.D.2d 156, 646 N.Y.S.2d 99 (1st Dep't 1996) (A cause of action is deemed to accrue from the date the injury is sustained). Therefore, the Court will apply Virginia's statute of limitations, which, as is discussed below, is substantially shorter than New York's statute of limitations.[7]

■ Virginia has not enacted a specific statute of limitations for actions for breach of fiduciary duty. Thus, plaintiff's claims fall under the catch-all provision of section 8.01–248 of the Virginia Code, which in 1991 provided for a one year statute of limitations. *See* Va.Code Ann. § 8.01–248 (amended in 1995 to allow a two-year statute of limitations for actions accruing after July 1, 1995); *F.D.I.C. v. Cocke*, 7 F.3d 396, 401 (4th Cir.1993); *LaVay Corp. v. Dominion Federal Savings and Loan Ass'n*, 830 F.2d 522, 527 (4th Cir.1987). Accordingly, plaintiff's claims against Teti for breach of fiduciary duty are time barred.

■ In the alternative, Teti argues that Maryland's three year statute of limitations for breach of fiduciary claims applies because he performed all his services

---

6. Section 202 states:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202 (McKinney 1995).

7. The Court rejects plaintiff's argument that her claims against Teti accrued in New York rather than Virginia. Plaintiff argues that she suffered her injury in New York because Teti's conduct as conservator led DCI to terminate plaintiff's DCWC franchise in Westchester County, New York. The Court does not agree that this tenuous link between New York and the facts of this case is sufficient to determine application of the borrowing statute. Plaintiff alleges no negligence or malfeasance by Teti in his management of the Westchester franchise. The record indicates that Teti's responsibilities as conservator ended long before DCI terminated the DCWC franchise, and plaintiff has neither pleaded nor offered any proof of a coherent theory linking any breach of fiduciary duty by Teti to the termination of the DCWC franchise.

in Maryland. The relevant provision, Maryland Code § 5–101, provides:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

*See* Md.Code Ann. Cts. & Jud. Proc. § 5–101; *see also Ladzinski v. MEBA Pension Trust*, 951 F.Supp. 570, 574 (D.Md.), *aff'd*, 120 F.3d 261, 1997 WL 452237 (4th Cir. 1997) (statute of limitations for breach of fiduciary duty is three years). As the statute of limitations began to run in 1991 when DCI terminated plaintiff's franchises, plaintiff's claims against Teti were clearly time barred when she commenced this action in 1995. Thus, plaintiff's claims for breach of fiduciary duty are time barred whether Virginia or Maryland law applies, and the Court must grant summary judgment in favor of Teti.[8]

### USF & G's Motion for Summary Judgment

■ USF & G moves for summary judgment on plaintiff's claim that USF & G negligently issued a receiver's bond to Teti instead of a conservator's bond. Plaintiff's claim must fail as a matter of law. First, there is no tort for issuing the wrong type of bond or for failure to investigate the circumstances surrounding the issuance of a bond. *See T.P.K. Construction Corp. v. Southern American Ins. Co.,*

752 F.Supp. 105, 110 (S.D.N.Y.1990) (dismissing action for negligent issuance of surety bond). Plaintiff has not alleged a claim for breach of contract, the only sustainable claim against a surety. *See id.* Furthermore, assuming arguendo that plaintiff could state a negligence claim against USF & G, plaintiff has shown no injury arising from USF & G's issuance of a receiver's bond rather than a conservator's bond, or even how these bonds differ in any way other than name. Having failed to establish any claim against Teti, plaintiff cannot possibly have been injured by any conduct of USF & G in connection with issuance of the bond. Accordingly, the Court must grant summary judgment on plaintiff's claim of negligence against USF & G.

### CONCLUSION

For reasons set forth above defendants' motions for summary judgment are granted. The Clerk of Court is directed to enter Judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**

---

8. Teti also argues that plaintiff's claim of negligence should be interpreted as accountant's malpractice because of his status as a certified public accountant during his conservatorship. To the extent that there is any claim of accountant's malpractice, the Court need not consider where the action accrued because the statute of limitations for accountant's malpractice in New York, Virginia and Maryland is three years. *See* N.Y. C.P.L.R. § 214(6) (McKinney 1995); Va.Code Ann. § 8.01–246(4) (Michie 1995); MD.Code Ann. § 5–101 (1995); *Economic Development v. Arthur Andersen & Co.*, 924 F.Supp. 449, 480 (S.D.N.Y. 1996) (three year statute of limitations under New York law); *H.C.Boone v. C. Arthur Weaver Co. Inc.*, 235 Va. 157, 365 S.E.2d 764 (1988)(three year statute of limitations under Virginia law); *Feldman v. Granger*, 255 Md. 288, 257 A.2d 421 (1969) (three year statute of limitations under Maryland law).

The Virginia Circuit Court appointed Teti as conservator/trustee of the assets of plaintiff and her husband, including the franchises in Montgomery County and Westchester County, pursuant to the Order of Appointment on March 28, 1991. The Property Settlement of October 17, 1991, rescinded the Order of Appointment. Therefore, Teti served as trustee from March 28, 1991, until October 17, 1991. Plaintiff's cause of action against Teti accrued no later than October 31, 1991, the date that Teti turned over copies of all related documents to plaintiff's attorney. Plaintiff filed the instant action in April 1995, more than three years after the cause of action accrued.