IDA LOUISE KNAPP, Respondent, v. GOULD AUTOMOBILE COMPANY, INC., Appellant.

Fourth Department, November 5, 1937.

*George S. Tripp* and *Francis E. Cullen*, for the appellant.

*E. Ralph Gosier* [*Daniel Scanlon* and *Loren E. Harter* of counsel], for the respondent.

LEWIS, J.  A jury has awarded to the plaintiff damages for personal injuries sustained while a guest in an automobile owned by the defendant.  Concededly the accident resulted from a mechanical defect in the car — not from fault in its operation or from plaintiff's contributory negligence.  Our problem is to determine the extent of defendant's legal duty to the plaintiff under the circumstances disclosed by the record.

The defendant is a corporate automobile sales agency doing business at Watertown, N. Y., in connection with which it maintains a garage for servicing automobiles.  On August 8, 1935, it lent to its secretary, Mrs. Emma C. Gould, the use of one of its cars for the conveyance of six persons, of whom plaintiff was one, upon a mission entirely unrelated to defendant's business.  The car operated perfectly for a distance of seventy miles to a point where, without warning, the left rear wheel suddenly came off, causing the car to be deflected into a side ditch where the plaintiff sustained the injuries for which she has recovered against the defendant. When the wheel was found and the car was inspected after the accident, it was discovered that the nuts which apply to five threaded studs and serve to bolt the wheel to the car, were missing.  They were later found on the ground near the point where the dismounted wheel had come to rest.

There is no proof that when the car left defendant's garage the five nuts were not in place; nor is there proof as to when they became disengaged.  As to their visibility when in normal position,

it appears that the hub portion of the wheel mechanism, comprising, among other parts, the threaded studs and nuts by which the wheel is fastened to the car, is not exposed to view. It is completely covered by a thin metal disc or hub cap closely fitted over the outside of the hub but so devised as to be easily unclamped and removed.

As to the condition of the car immediately prior to the accident, plaintiff's witness Edwin M. Waite, who was driving at the time, testified on direct examination: "Q. How did the car seem to handle as you drove along until the time just previous to the accident? A. Perfectly. I didn't see anything wrong with the car, it handled perfectly."

The only proof bearing upon the condition of the car prior to that time shows that it had been used by defendant for demonstration purposes and then sold to a purchaser who returned it after two months' driving because he noticed "a noise or rumbling sound." He found nothing else wrong with the car. Plaintiff's effort to have the purchaser locate the sound more definitely brought forth the statement that it came from "the rear end, * * * just where I don't know." Later, on cross-examination, the purchaser testified that the sound — a steady, rumbling noise — was "in the differential, * * * not in the wheels," and in answer to the court's question whether speed made a difference in the sound, he described it as more noticeable at twenty-five to forty miles an hour than at a lower speed. He recalled no trouble with the wheels and had no knowledge whether either rear wheel had been taken off. In fact there is no proof in the case that any wheel had been removed while the car was in defendant's possession. There is proof that gears were replaced.

Upon this evidence the trial justice, in his charge to the jury, gave the following definition of defendant's legal duty to the plaintiff: "It [the defendant] owed a duty to exercise reasonable care to the end that an automobile of its own, allowed by it to be used by another, should be safe to drive upon the highway. * * * It owed the duty to exercise reasonable care in this particular case to discover whether this car in respect of the wheels * * * was in a reasonably safe condition. * * * There should be reasonable care exercised, such care as a reasonably prudent and careful person under the circumstances would exercise to determine this question, taking into consideration the mechanical knowledge of one who holds himself out to the public as being capable of servicing cars. * * * I think that under my definition of the duty on the part of this defendant that implies that there should be reasonable inspection to determine the vital question as to whether the car was safe to be upon the road or not."

We regard these excerpts from the court's charge as exaggerating the legal duty which the defendant owed to the plaintiff under the evidence before us.

In considering the standard of care required of the defendant there should be added to the background of facts outlined above the undisputed proof that at the time of the accident plaintiff, as a guest in the car, had accepted conveyance for her personal convenience to visit a friend who was ill. There is no proof that her presence in the car was known to defendant. She was there by the invitation of Mrs. Gould who was bent upon the same mission and who in turn had asked and received from the defendant the free use of its car for purposes of her own. Under these circumstances we may disregard Mrs. Gould's official connection with the defendant corporation. (*Fallon* v. *Swackhamer*, 226 N. Y. 444, 448; *Glennie* v. *Falls Equipment Co., Inc.*, 238 App. Div. 7, 9.)

The legal relationship thus created between the defendant and Mrs. Gould was that of bailor and bailee. Defendant's loan of an automobile to Mrs. Gould for use without hire was a gratuitous bailment. (*Gochee* v. *Wagner*, 257 N. Y. 344, 347. Cf. Story on Bailments [9th ed.], § 219; 4 Elliott on Contracts, §§ 3022, 3025.)

We hold that the defendant, as a gratuitous bailor, owed no greater legal duty to the plaintiff, who shares the permissive use of its car as a guest of its bailee, than it owed to the bailee herself. To Mrs. Gould, its gratuitous bailee, defendant owed only the duty of giving warning or notice of those defects in the car, if any, of which it had knowledge and which in reasonable probability would imperil those using it. (*Blakemore* v. *Bristol & Exeter R. Co.*, 8 E. & B. [Q. B.] 1035, 1051; *MacCarthy* v. *Young*, 6 Hurl. & Nor. 329, 334, 335; *Coughlin* v. *Gillison*, L. R. [1899] 1 Q. B. D. 145, 147, 149; *Gagnon* v. *Dana*, 69 N. H. 264, 266, 267; 39 A. 982. Cf. 2 Beven on Negligence [4th ed.], pp. 948, 949; Story on Bailments [9th ed.], § 275; Schouler on Bailments & Carriers [3d ed.], § 79.)

A ruling directly in point is found in *Johnson* v. *Bullard Co.* (95 Conn. 251; 111 A. 70). There the defendant lent the use of its truck to an employee for a personal errand. The borrower in turn invited several guests to accompany him. Due to a defect in a connecting part by which the body of the truck was attached to the chassis, the body broke away as the truck turned a corner, thus causing the fatality which followed. In a suit by the personal representative of one of the borrower's guests, the defendant was charged with negligence for having permitted a defective vehicle to be lent to and used by its employee. Upon plaintiff's failure

to prove knowledge by the defendant of such defect the court reached the conclusion (p. 258) that "the duty of the defendant to the borrower, Lewis, and so to the plaintiff's intestate, was to disclose any defect of which it was aware which might make the loan perilous to Lewis or those whom he invited or allowed to ride with him. The duty went no further than this, and the defendant cannot be made liable for not communicating anything it did not in fact know, whether it ought to have known it or not. * * * If the defendant itself did not have actual notice, it is not liable for failure to give notice." (See, also, *Dickason* v. *Dickason*, 84 Mont. 52, 59; 274 P. 145. Cf. 6 Am. Juris. p. 286, § 193; also vol. 5, p. 698, § 358.)

As a legal principle the rule which thus limits the liability of a gratuitous bailor is akin to the prevailing rule in this State which defines the legal duty of an automobile owner to a guest who rides at his invitation. The rule found expression in *Higgins* v. *Mason* (255 N. Y. 104, 110): "Under the authorities, the defendant host, George Mason, was not liable for the death of his guest, Robert Higgins, because of a mechanical defect in his car, although Mason, by inspection, might have discovered the fault, since Higgins, in accepting the invitation to ride, must have taken the car as he found it and no duty of inspection rested upon Mason. Mason would be liable only if he *knew* of the dangerous condition; *realized* that it involved an unreasonable risk; *believed* that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved." (See, also, *Galbraith* v. *Busch*, 267 N. Y. 230, 235; *Lahr* v. *Tirrill*, 274 id. 112, 116; *Patnode* v. *Foote*, 153 App. Div. 494, 496.)

We reach the conclusion that the trial court erred in its definition to the jury of defendant's duty to the plaintiff. It extended the standard of care required of the defendant — a gratuitous bailor — beyond the limits which we believe are fixed where the rights of a guest of a gratuitous bailee are involved. Under the authorities cited, which deal with the duty of a gratuitous bailor and which we regard as applicable to the record before us, it was only the presence of *known* danger attendant upon *known* use which made defendant's vigilance a duty.

The judgment and order from which appeal is taken should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.