OPINION OF THE COURT
Simons, J.
Plaintiff Otto F. Schumacher was blinded in one eye when he was struck by a scrap of flying metal ejected by a model 300-ton shearing machine he was operating at work. He and his wife sue defendant Richards Shear Company, Inc., who manufactured and sold the machine to his employer, and defendant Logemann Brothers Company, Inc., who subsequently purchased substantially all of Richards’ assets. They seek to recover compensatory and derivative damages for the injury on theories of strict products liability and negligence. Richards Shear has interposed a cross claim against Logemann. The issue on this appeal is whether defendant Logemann is liable to plaintiff for the tortious conduct of Richards Shear or for its own conduct subsequent to acquiring Richards Shear’s assets.
Defendant Logemann maintains that it is not liable in an action in strict products liability as a successor of Richards Shear under the rule of Hartford Acc. & Ind. Co. v *243 Canron, Inc. (43 NY2d 823) or under extensions of that rule recognized in other jurisdictions (see Ray v Alad Corp., 19 Cal 3d 22; Ramirez v Amsted Inds., 86 NJ 332 [the product line theory]; and see Turner v Bituminous Cas. Co., 397 Mich 406 [the “continuity of enterprise” theory]), and that it cannot be held liable for its own nonfeasance because it had no common-law duty to warn plaintiff of any defect in the machine. It moved for summary judgment dismissing the complaint and the cross claim. Special Term granted the motion and the Appellate Division affirmed with two Judges dissenting. The dissenters found factual issues warranting a trial on whether defendant Logemann’s failure to warn plaintiff’s employer of danger from the machine constituted negligence.
 There should be a modification. Defendant Logemann’s motion for summary judgment should be granted dismissing the first cause of action in strict products liability and denied insofar as it seeks dismissal of the cause of action alleging a negligent failure to warn. We hold that the rule in Hartford Acc. & Ind. Co. v Canron, Inc. (supra) applies to personal injury cases and bars recovery from defendant Logemann for any fault of Richards Shear. Moreover, there are no facts alleged which warrant our consideration or application of the “product line” or “continuity of enterprise” theories extending liability to a successor corporation. The court is also unanimous in its recognition that a negligence cause of action for failure to warn may exist on behalf of an employee injured by an unsafe machine against a manufacturing corporation which subsequently acquires all or part of the assets of the manufacturer of the machine. The duty arises because of the relationship between the acquiring corporation and the purchaser of the machinery, plaintiff’s employer in this case, and because of the knowledge which the acquiring corporation possesses or has reason to possess concerning the risk of personal injury created by operation of the machine without a safety guard. We disagree only on whether evidence submitted by plaintiff in response to defendant’s motion for summary judgment is sufficient to create an issue of fact. A majority of the court believes it is. Accordingly, Logemann’s motion for summary judgment *244 should have been denied as to the failure to warn cause of action.
Plaintiff, an employee of Wallace Steel and Supply Company, was injured on April 17,1978 when he was struck by a piece of metal thrown from a hydraulic shearing machine while he was operating it. The machine was purchased by plaintiff’s employer from Richards Shear in January, 1964. It is plaintiff’s contention that the machine was defective in design and manufacture because it did not have a guard to deflect metal ejected from the machine, and that Richards Shear and Logemann should have taken measures to correct the existing dangerous condition or have alerted users of it.
Logemann’s status as a “successor” arises principally from a “License and Sales Agreement” dated January, 1968 in which Richards Shear granted to Logemann, among other things, the exclusive right to manufacture and sell Richards Shear products, improvements, and inventory, and to use the trade name “Richards”. In substance, the transaction was a sale of all assets because thereafter Richards Shear discontinued its business of selling, manufacturing and servicing shears. Currently, it has no liability insurance, employees, or business volume and it has few assets.
In February, 1968, approximately four years after plaintiff’s employer purchased the machine from Richards Shear, Logemann contacted plaintiff’s employer, Wallace Steel, and notified it of the acquisition of the Richards Shear product line along with the inventories and blueprints for new shears. In July, 1968, a former Richards Shear serviceman was sent by Logemann to service and check Wallace Steel’s machine. Thereafter, in April, 1976, Logemann again contacted Wallace Steel and solicited business with respect to the shear machine, made assurances concerning service, and notified Wallace Steel of its acquisition of another former Richards Shear serviceman. Logemann also supplied Wallace Steel with replacement parts for the machine.
It is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor (19 CJS, Corporations, § 1380; 15 Fletcher’s *245 Cyclopedia Corporations [rev ed], § 7122). There are exceptions and we stated those generally recognized in Hartford Acc. & Ind. Co. v Canron, Inc. (43 NY2d 823, 825, supra). A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor’s tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations. Nothing in the record suggests liability under any of these theories. The only arguable basis upon which plaintiffs can predicate a finding of successor liability is to characterize Logemann as a “mere continuation” of Richards Shear Company. The exception refers to corporate reorganization, however, where only one corporation survives the transaction; the predecessor corporation must be extinguished (see McKee v Harris-Seybold Co., 109 NJ Super 555; Ladjevardian v Laidlaw-Coggeshall, Inc., 431 F Supp 834, 839). The cases cited by plaintiff do not hold otherwise (Cyr v Offen & Co., 501 F2d 1145; Turner v Bituminous Cas. Co., 397 Mich 406, supra). Since Richards Shear survived the instant purchase agreement as a distinct, albeit meager, entity, the Appellate Division prop^ erly concluded that Logemann cannot be considered a mere continuation of Richards Shear.
Plaintiffs also contend that liability may be imposed on defendant Logemann for strict products liability based upon recent decisions in other jurisdictions which have extended. successor liability. The courts that have addressed the issue impose strict products liability on a successor corporation, based upon a balancing approach, where there has been a basic “continuity of the enterprise” of the seller corporation (Turner v Bituminous Cas. Co., 397 Mich 406, supra), an expansion of the traditional merger or consolidation exceptions, or where the successor corporation continues to produce the predecessor’s product in the same plant (Ray v Alad Corp., 19 Cal 3d 22, supra, [“product line” exception]). We do not adopt the rule of either case but note that both are factually distinguishable in any event. Applying the test adopted by the Michigan Supreme Court in Turner to the instant facts, plaintiffs *246 would have no claim against defendant Logemann as a matter of law because the factors manifesting continuity of corporate responsibility, such as continuity of management, key personnel, and physical location are not present in this case. Logemann did not purchase the manufacturing plant or equipment of Richards Shear and except for the hiring, of two servicemen, no employees of Richards Shear became employees of Logemann. A stronger claim may be based upon the “product line” theory developed by the California Supreme Court in Ray v Alad Corp. (supra). In Ray, the court, noting its rule on successor liability (which is the same as New York’s), stated that where none of the four exceptions for imposing liability were present, it would consider the policies underlying strict tort liability for defective products to determine whether an exception to the general rules insulating the defendant therein from liability were warranted. These policies included the availability of remedies for the injured plaintiff as well as the fairness of requiring the successor to assume a responsibility for defective products. However, the Ray case presented unique facts which are clearly distinguishable from the present case and the California court’s policy decision was obviously influenced by them. Those circumstances, the dissolution of the prior corporation shortly after the purchase of its equipment and the use by the successor corporation of essentially the same factory, name and office personnel after the transactions to produce the same product, are not present in this case.
Logemann may be answerable to plaintiffs, however, apart from liability resting 'on its status as a successor corporation. Under general tort rules, a person may be negligent because he or she fails to warn another of known dangers or, in some cases, of those dangers which he had reason to know. The duty commonly is imposed because of some special relationship, frequently economic, not only for those bearing special responsibilities such as common carriers and innkeepers, but on defendants generally, e.g., owners and occupiers of land (see Restatement, Torts 2d, § 356 [landlord and tenant]; Krause v Alper, 4 NY2d 518; Restatement, Torts 2d, § 373 [vendor and vendee]; Velez v City of New York, 45 AD2d 887 [duty of owner to warn one *247 on premises]; and see, generally, 2 Harper and James, Torts, §§ 27.15, 27.16; Prosser, Torts [4th ed], § 57 et seq.), on operators of motor vehicles to their passengers (see Higgins v Mason, 255 NY 104, 109), bailors to their bailees (see Knapp v Gould Auto. Co., 252 App Div 430, 433), and suppliers and manufacturers of chattels (see, generally, Restatement, Torts 2d, § 388; 2 Harper and James, Torts, §28.7; 1 Weinberger, NY Products Liability, § 18.18 et seq.; 1 NY PJI2d, p 364). As Professor Prosser has stated: “[d]uring the last century, liability for ‘nonfeasance’ has been extended still further to a limited group of relations, in which custom, public sentiment and views of social policy have led the courts to find a duty of affirmative action. It is not likely that this process of extension has ended. For the most part such a duty has been imposed where the relation is of some actual or potential economic advantage to the defendant, and the expected benefit justifies the requirement of special obligations” (Prosser, Torts [4th ed], § 56, p 339). Consistent with that observation, several recent Federal cases have recognized that a successor corporation may have an independent duty to warn under circumstances similar to those present in this case (see Leannais v Cincinnati, Inc., 565 F2d 437; and cf. Tucker v Paxson Mach. Co., 645 F2d 620; Gee v Tenneco, Inc., 615 F2d 857; Travis v Harris Corp., 565 F2d 443). The courts focused upon the relationship between the defendant “successor” corporation and the customers of the predecessor and the actual or potential economic advantage to the defendant successor corporation. Several factors may be considered in determining whether there exists a sufficient link to create a duty to warn, among them “[succession to a predecessor’s service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, [and] a purchaser corporation’s knowledge of defects and of the location or owner of that machine” (Travis v Harris Corp., 565 F2d 443, 449, supra).
In Travis, plaintiff was injured in 1973 by a die press machine which his employer had purchased a year before the injury. The machine had been manufactured in 1957 by C. B. Sheridan Company (Old Sheridan), sold to Inland *248 Container Corporation in that year, and then purchased by plaintiff’s employer. Defendant Harris Corporation purchased all the assets of Old Sheridan Company in 1964. When plaintiff sued defendant Harris Corporation, the court acknowledged his theory of liability based upon a duty to warn but rejected his contention that Harris had such a duty to his employer (565 F2d 443, 448). The only fact offered in support of the claim was a single service call by defendant’s employee to Inland, a prior purchaser of the machine, not plaintiff’s employer. In Leannais v Cincinnati, Inc. (supra), however, the same court found a duty to warn when the machine which injured plaintiff was manufactured and sold by defendant’s predecessor in 1964, defendant acquired the assets in 1967, and plaintiff was injured in 1973. Despite the expressed refusal of the successor to assume liability for the predecessor’s torts, the court found an issue of fact on the relationship of the successor to the predecessor’s customers, the knowledge of their identity and the equipment they possessed and the economic benefit to the successor.
The Appellate Division here ruled as a matter of law that no duty to warn should be imposed upon Logemann as a purchaser corporation. Applying traditional common-law tort concepts, it noted that 14 years had elapsed between the purchase and the date of plaintiff’s injury and that there was a lack of foreseeability because of this lapse of time. Thus, it held that there was no lack of reasonable care under the circumstances. Certainly, the passage of time is relevant to the duty issue, but it is not dispositive (see Leannais v Cincinnati, Inc., 565 F2d 437, 442, supra).
There is sufficient evidence in this record of contacts between Logemann and Wallace Steel to defeat the motion for summary judgment (see Wilson v Fare Well Corp., 140 NJ Super 476; Shane v Hobam, Inc., 332 F Supp 526). Other than the single service call (which, standing alone, might not be enough to create a duty to warn), Logemann knew of the location and owner of the machine and actively offered to service it. Moreover, Logemann held itself out on at least two occasions as having expertise in the product line it had acquired from Richards Shear. Although Logemann apparently did not formally assume Richards *249 Shear’s service contracts, it did, in fact, offer to service the machine to the potential economic advantage of both parties. On the trial plaintiff will be required to establish that a duty to warn existed based upon these contacts between defendant Logemann and plaintiff’s employer. Its liability, if any, arises out of this relationship, not because of any “successor” liability or because it acted as a serviceman or repairman for the machine.
On the issue of knowledge, Logemann claims that an isolated service call did not bring the absence of a protective guard to its attention. However, there is evidence on the record to indicate that this defect was open and notorious based on prevailing industry standards. This was sufficient to create a jury question on the issue of what Logemann knew or had reason to know (see Restatement, Torts 2d, § 401, Comment i).
One of the dissenters contends that as a matter of law there was no duty to warn because the alleged defect was open and notorious and that fact alone negated the duty to warn (at p 254). That theory of liability rests upon the distinction between latent and patent defects which we rejected in Micallef v Miehle Co., Div. of Miehle-Goss Dexter (39 NY2d 376).
The order of the Appellate Division should be modified by denying defendant’s motion to grant summary judgment as to plaintiff’s second cause of action sounding in negligence and as so modified affirmed.