OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
Plaintiff Thomas Sullivan, an employee of Dunkirk Ice Cream Company, was severely injured on November 3, 1976 when a five-foot long ice chopper he was using to remove bent trays from an ice cream hardening machine struck the blade of one of the cooling fans used in connection with the machine. Although the machine was "down” at the time, no one had turned off the fan. A piece of the fan blade splintered off and hit Sullivan — who was standing on a catwalk between the machine and the fans — in the eye.
The machine, manufactured by J. W. Greer Company, had been sold to Foremost Dairies in 1962. Dunkirk purchased the machine, as well as the fans, from Foremost in 1970. The fans were manufactured by Joy Manufacturing Company. After the machine had been dismantled and stored for three years, in February 1973 it was installed at Dunkirk’s facility. Dunkirk *808 then asked J. W. Greer Incorporated (Greer) to inspect the machine. Greer — one of the defendants in this action and the respondent on this appeal — had by that time acquired all of the assets of J. W. Greer Company, the manufacturer of the machine. On January 31 and February 1, 1974, Francis MacDonald, a Greer employee, made the inspection. At the time of MacDonald’s inspection, the catwalk and the cooling fans (a virtually free-standing unit) had not yet been installed; indeed, it is not clear from the record that they were even present at the location of the machine. MacDonald’s uncontradicted testimony was that the ice cream hardening machine was in a room by itself and not operational, and that he inspected it for alignment and physical condition.
Sullivan and his wife brought this action against several defendants, asserting claims against Greer based upon strict products liability, breach of warranty and negligence. Supreme Court granted Greer’s motion for summary judgment as to strict liability and breach of warranty, but left standing the negligence claim, based on Greer’s breach of its duty to warn Dunkirk of defects or dangers of the machine. On Greer’s appeal, the Appellate Division dismissed plaintiffs remaining cause of action against it, concluding that the record did not raise an issue of fact as to the existence of a "special relationship” between Dunkirk and Greer, as successor to the manufacturer of the machine, so as to impose a duty to warn on Greer (Schumacher v Richards Shear Co., 59 NY2d 239).
In Schumacher we noted that a duty to warn "commonly is imposed because of some special relationship, frequently economic” (59 NY2d, at 246, supra), and determined that such a duty could be imposed on a successor corporation that maintained sufficient links to the purchaser of products manufactured by its predecessor. We identified the following factors as among those that might be considered in determining whether there were sufficient links: succession to the predecessor’s service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, and a purchaser corporation’s knowledge of defects and of the location or owner of that machine (59 NY2d, at 247, supra). Without reaching the question whether Greer could in any event be liable for harm caused by the fan, we agree with the court below that the single service call is not sufficient to establish a "special relationship” between Greer and Dunkirk. Nor on this record is any issue of material fact *809 raised by plaintiffs’ contention that Greer breached an independent duty to warn growing out of its own arrangement with Dunkirk to inspect the ice cream hardening machine. That arrangement could not give rise to a duty to inspect equipment of another manufacturer that was not yet installed —or possibly not even present — when Greer was called upon to make its inspection.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs, in a memorandum.