[696 NYS2d 528]

RHODA G. ROTHSTEIN, as Executrix of ARI ROTHSTEIN, Deceased, Respondent, v TENNESSEE GAS PIPELINE COMPANY, Formerly Known as TENNECO, INC., et al., Defendants, AMERICAN CYANAMID COMPANY, Appellant, and CHROMALLOY PHARMACEUTICAL CORP., Respondent.

Second Department, October 18, 1999

## APPEARANCES OF COUNSEL

*Dechert Price & Rhoads,* New York City (*Norbert F. Bergholtz, Robert A. Cohen* and *Rodney M. Zerbe* of counsel), for appellant.

*Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P. C.,* Cherry Hill, New Jersey (*Michael Coren, Mark S. Levy* and *Amy R. Brandt* of counsel), and *Laurence H. Pearson,* New York City, for Rhoda G. Rothstein, respondent. (One brief filed.)

*Weil, Gotshal & Manges, L. L. P.,* New York City (*Peter A. Antonucci* and *Arvin Maskin* of counsel), for Chromalloy Pharmaceutical Corp., respondent.

## OPINION OF THE COURT

Per Curiam.

In 1948 or 1949, a radioactive X-ray contrast dye known as Thorotrast was administered to Ari Rothstein, the plaintiff's decedent, who was then approximately 10 years old. In 1988

Mr. Rothstein died while undergoing exploratory surgery as a result of internal bleeding due to an angiosarcoma mass on his liver. Two years later, his widow, the plaintiff, commenced this action alleging that her husband's cancer had been caused by the administration of the dye. On a prior appeal, we held that CPLR 214-c, the toxic tort discovery statute, was applicable to the personal injury causes of action asserted in the complaint and that consequently, those causes of action were not time-barred (*see, Rothstein v Tennessee Gas Pipeline Co.,* 204 AD2d 39, *affd* 87 NY2d 90). The defendant American Cyanamid Company (hereinafter Cyanamid) and various other defendants subsequently moved for summary judgment. The Supreme Court denied Cyanamid's motion, but granted summary judgment to the other movants.

Heyden Chemical Corporation (hereinafter Heyden) was the sole manufacturer of Thorotrast at the time it was administered to the decedent. Some four or five years later, on or about December 1, 1953, Heyden sold its antibiotic division to Cyanamid for approximately $13,700,000. The sale included assets relating to Thorotrast and another X-ray contrast medium called Umbrathor, which, although not antibiotics, were manufactured at the same facility where the antibiotics division was located. The antibiotics division constituted less than 20% of Heyden's business and the Thorotrast assets were a very small part of the business. Thorotrast sales for the first 11 months of 1953 totaled approximately $14,000, while Heyden reported net sales of about $23,400,000 for that year. Cyanamid did not assume the contingent tort liabilities of Heyden as part of its purchase of the antibiotic division. After the sale, Heyden remained in business until 1963.

In January 1954, Cyanamid notified the Food and Drug Administration that it would not manufacture or distribute Thorotrast. In May of that year it sold its Thorotrast and Umbrathor inventory, equipment, customer lists, trademarks, and information, including medical information regarding Thorotrast's toxicity, to Testagar & Co., Inc. (hereinafter Testagar), a former distributor of Thorotrast for Heyden. In its proposal for sale, Cyanamid offered to sell the Thorotrast and Umbrathor assets for either a single cash payment of $25,000 or a payment of approximately $10,000 plus a 5% royalty of the net sales value of the products sold over the life of the trademarks. Testagar opted for the latter, and Cyanamid ultimately received approximately $11,000 in royalties. A successor corporation to Testagar discontinued the marketing of Thorotrast in 1968.

■ The plaintiff alleges that Cyanamid is liable as a successor corporation to Heyden and for breach of an independent duty to warn of the dangers of Thorotrast. In denying Cyanamid's motion for summary judgment, the Supreme Court acknowledged the rule that a corporation which purchases the assets of another is not ordinarily liable for the predecessor's tortious conduct and properly concluded that none of the generally-recognized exceptions to that rule were applicable. Cyanamid did not expressly or impliedly assume Heyden's tort liability; there was no consolidation or merger of the two corporations; Cyanamid was not a mere continuation of Heyden; and the transaction was not fraudulently entered into to avoid liability (*see, Schumacher v Richards Shear Co.,* 59 NY2d 239, 245). The court, however, applied another exception, known as the product line exception, which has been adopted by the Appellate Division, Third Department (*see, Hart v Bruno Mach. Corp.,* 250 AD2d 58) and à minority of other jurisdictions (*see, e.g., Ray v Alad Corp.,* 19 Cal 3d 22, 560 P2d 3; *Ramirez v Amsted Indus.,* 86 NJ 332, 431 A2d 811). The Court of Appeals has not definitively spoken on the issue (*see, Schumacher v Richards Shear Co., supra,* at 245). The product line exception has been rejected by the Appellate Division, First Department (*see, City of New York v Pfizer & Co.,* 260 AD2d 174) and the American Law Institute (*see,* Restatement [Third] of Torts: Products Liability § 12).

We need not reach the issue of whether the product line exception should be adopted because it would not, in any event, be applicable under the facts of this case. The necessary factors for application of the exception include: (1) the virtual destruction of the injured person's remedy against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's continuation of the manufacture of essentially the same product; (3) the successor's ability to assume the original manufacturer's risk-spreading role; and (4) the successor's enjoyment of the benefits of the original manufacturer's good will in the continuation of the same product line (*see, Hart v Bruno Mach. Corp., supra,* at 60; *Ray v Alad Corp., supra*).

Here, Cyanamid's purchase of less than 20% of Heyden's assets, a small part of which constituted the Thorotrast-related assets, did not destroy the plaintiff's remedy against Heyden. Heyden continued as an ongoing, viable business for 10 years after the transfer. The plaintiff can no longer proceed against Heyden because it ceased existence in 1963 for reasons totally

unrelated to Cyanamid's purchase of a portion of its assets. Further, Cyanamid never manufactured or sold Thorotrast. It passively owned the Thorotrast-related assets for six months and sold them to Testagar. Therefore, Cyanamid did not have the opportunity or ability to estimate the risk of claims and to pass the cost of meeting those risks along to the public. In addition, Cyanamid did not reap the benefits of Heyden's good will by continuing to sell Thorotrast. The payment of a small amount of royalties to Cyanamid over the years was simply part of the financing arrangements for Testagar's purchase of the assets; it was not a continued benefit of Cyanamid's exploitation of Heyden's good will. Consequently, the Supreme Court erred in applying the product line exception.

■ The court also erred in concluding that Cyanamid may be liable in negligence for breach of a duty to warn. Cyanamid's knowledge of the dangers of Thorotrast, which were fully disclosed to Testagar, is not sufficient to impose a duty to warn. A duty to warn is commonly imposed "because of some special relationship, frequently economic" (*Schumacher v Richards Shear Co., supra,* at 246). It may be "imposed on a successor corporation that maintain[s] sufficient links to the purchaser of products manufactured by its predecessor" (*Sullivan v Joy Mfg. Co.,* 70 NY2d 806, 808). The record fails to establish that Cyanamid had a relationship with any of Heyden's customers, or that it had a sufficient economic interest in the sale of Thorotrast (*see, Sullivan v Joy Mfg. Co., supra*). As previously indicated, the payment of royalties was a financing arrangement selected by Testagar in lieu of a single payment to Cyanamid for the Thorotrast and Umbrathor assets. Further, there is no admissible, probative evidence that Cyanamid's failure to warn Heyden's customers of the dangers of Thorotrast was a proximate cause of the decedent's injuries and death. Consequently, Cyanamid was entitled to summary judgment dismissing the complaint insofar as asserted against it. Accordingly, the appeal from so much of the order as purportedly dismissed the appellant's cross claim against the defendant Chromalloy American Corporation is dismissed, as the order did not dismiss the cross claim, and the order is reversed insofar as reviewed, the appellant's motion for summary judgment dismissing the complaint insofar as asserted against it is granted, and the complaint is dismissed in its entirety.

In light of our determination, it is unnecessary to address Cyanamid's remaining contention.

THOMPSON, J. P., SULLIVAN, ALTMAN and FEUERSTEIN, JJ., concur.

Ordered that the appeal from so much of the order as purportedly dismissed the appellant's cross claim against the defendant Chromalloy American Corporation is dismissed, as the order did not dismiss the cross claim; and it is further,

Ordered that the order is reversed insofar as reviewed, on the law, with costs, the appellant's motion for summary judgment dismissing the complaint insofar as asserted against it is granted, and the complaint is dismissed in its entirety.