Spain, J.
*1576 In December 2010, plaintiff commenced this action against Hastings and Main Brothers, alleging negligence on the part of Hastings and that Main Brothers was liable as the successor in interest to Hastings. Main Brothers answered and asserted a cross claim against Hastings for indemnification. Plaintiff thereafter agreed to discontinue its direct claim against Hastings and moved for leave to amend its complaint to assert direct liability against Main Brothers based on Main Brothers’ own alleged negligence in failing to discover and/or correct the defect while servicing the boiler in the years leading up to the fire.[1] Main Brothers cross-moved pursuant to CPLR 3211 to dismiss plaintiff’s complaint against it, alleging that the 1999 asset purchase agreement between Hastings and Ackner (hereinafter the asset purchase agreement) precluded successor liability as a matter of law (see CPLR 3211 [a] [1], [7]). Supreme Court granted plaintiffs motion to amend and denied Main Brothers’ cross motion, prompting this appeal by Main Brothers challenging the denial of its cross motion to dismiss the claim against it based on successor liability.[2]
“A ‘motion to dismiss on the ground that the action is barred by documentary evidence . . . may be appropriately granted only where the documentary evidence utterly refutes [the] *1577 plaintiffs factual allegations, conclusively establishing a defense as a matter of law’ ” (Mason v First Cent. Natl. Life Ins. Co. of N.Y., 86 AD3d 854, 855 [2011], quoting Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002] [citation omitted]; see Kilmer v Miller, 96 AD3d 1133, 1135 [2012], lv dismissed 19 NY3d 1042 [2012]). We agree with Supreme Court that the documentary evidence relied upon — the asset purchase agreement[3] —is insufficient in and of itself to bar plaintiffs claims and, thus, we now affirm.
Main Brothers argues that the asset purchase agreement is sufficient documentary evidence establishing that no successor liability existed, as it clearly delineates the only assets and liabilities that were assumed by Ackner from Hastings. It is the general rule that “[a] corporation which acquires the assets of another is not generally liable for the torts of its predecessor” (Wensing v Paris Indus.-N.Y., 158 AD2d 164, 166 [1990]; see Schumacher v Richards Shear Co., 59 NY2d 239, 244-245 [1983]). However, this rule is subject to several exceptions, namely that “[a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor’s tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations” (Schumacher v Richards Shear Co., 59 NY2d at 245; see Semenetz v Sherling & Walden, Inc., 7 NY3d 194, 198 [2006]).
Main Brothers correctly asserts that the third exception, “mere continuation,” cannot apply because it requires that the selling/predecessor corporation be fully extinguished for there to be successor liability, and no dispute exists that Hastings continued in business after the transfer of assets to Ackner (see Schumacher v Richards Shear Co., 59 NY2d at 245; Andrew Greenberg, Inc. v Sir-Tech Software, 297 AD2d 834, 836 [2002]). Further, no evidence of fraud exits that would suggest the applicability of the fourth exception. We hold, however, that the asset purchase agreement, in and of itself, does not eliminate the possibility that one of the first two exceptions could apply
*1578 First, the asset purchase agreement does not conclusively establish that Ackner did not expressly or impliedly assume liability for the contract between Bowditch and Hastings. Main Brothers relies on language in Article I, which states that “[o]nly those assets of HASTINGS which pertain to the sale of petroleum products and the sale and servicing of burners are included in this Agreement,” and the “ASSUMED LIABILITIES” section of Article II, which lists certain assumed liabilities and does not include any express language assuming liability for the past acts of Hastings. While this language certainly suggests that Ackner may not have assumed liability for past acts of negligence related to the installation of a boiler, we agree with plaintiff that other aspects of the asset purchase agreement render it ambiguous, precluding a finding as a matter of law. For example, the list of assets transferred comprehensively includes “[a] 11 contracts and other agreements which have been entered into in the ordinary course of business consistent with past practice to which HASTINGS is bound.” Further, under “ASSUMED LIABILITIES,” the asset purchase agreement states that “ACKNER will assume all pre-paid fuel oil contracts (also known as customer deposits) and heating equipment service contracts as set forth in Schedule F,” but no schedule F is attached in the record. Hence, we find that the asset purchase agreement contains ambiguities that are subject to conflicting interpretations, rendering dismissal based on documentary evidence inappropriate (see Thomas A. Sbarra Real Estate, Inc. v Lavelle-Tomko, 84 AD3d 1570, 1571 [2011]; Angelino v Michael Freedus, D.D.S., P.C., 69 AD3d 1203, 1206 [2010]; Cerand v Burstein, 72 AD3d 1262, 1266 [2010]; Witiuk v Mykytiw, 216 AD2d 779, 780-781 [1995]).
Likewise, questions of fact exist regarding whether the transfer of assets to Ackner by Hastings was a de facto merger that could give rise to successor liability. Under the concept of de facto merger, “ ‘a successor that effectively takes over a company in its entirety should carry the predecessor’s liabilities as a concomitant to the benefits it derives from the good will purchased’ ” (Winch v Yates Am. Mach. Co., 205 AD2d 1001, 1002 [1994], lv dismissed 84 NY2d 1027 [1995], quoting Grant-Howard Assoc. v General Housewares Corp., 63 NY2d 291, 296 [1984]; see Wensing v Paris Indus.-N.Y., 158 AD2d at 167). In conducting such an inquiry, we must consider factors such as, but not limited to, whether the successor purchased the predecessor’s intangible assets, goodwill, customer lists, accounts receivable, trademarks, and records, and whether there was any continuity of ownership, management, employees or the busi *1579 ness in general (see Winch v Yates Am. Mach. Co., 205 AD2d at 1002-1003; Mitchell v Suburban Propane Gas Corp., 182 AD2d 934, 935-936 [1992]; Wensing v Paris Indus.-N.Y, 158 AD2d at 167). As noted above, the list of transferred assets in the asset purchase agreement refers to specific schedules that are not annexed thereto, leaving ambiguity as to what exactly was transferred. Moreover, the list of transferred assets expressly includes “without limitation[,] all right, title and interest of HASTINGS in and to all accounts receivable . . . contract rights, licenses, permits, customer prospect and marketing lists, sales data, records . . . proprietary information and good will.” Under these circumstances, we agree with Supreme Court that ambiguities in the asset purchase agreement preclude a finding as a matter of law that no successor liability exists (see Winch v Yates Am. Mach. Co., 205 AD2d at 1002; Wensing v Paris Indus.-N.Y., 158 AD2d at 167).
To the extent that Main Brothers’ cross motion to dismiss may be considered one asserting a failure to state a cause of action pursuant to CPLR 3211 (a) (7), we likewise find it unavailing. The original complaint adequately stated a cause of action against Main Brothers based on a theory of successor liability and, inasmuch as we hold that the documentary evidence does not flatly contradict this claim (see Lopes v Bain, 82 AD3d 1553, 1555 [2011]), Main Brothers’ cross motion was in all respects properly denied.
Peters, P.J., Kavanagh, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.

. Hastings also moved, unsuccessfully, to dismiss Main Brothers’ cross claim for indemnification.

. To the extent that the parties present arguments on appeal related to Main Brothers’ direct liability, they are not properly before us, as plaintiff was not granted leave to amend its complaint to assert direct liability against Main Brothers until entry of the order here appealed from.

. In support of its cross motion, Main Brothers submitted an affirmation of its attorney, an affidavit of its controller, the asset purchase agreement and the stock purchase agreement between Ackner and Main Brothers. Because the affidavits are not documentary evidence as contemplated by CPLR 3211 (a) (1) (see Lopes v Bain, 82 AD 3d 1553, 1554 [2011]), the issue devolves to whether the asset purchase agreement conclusively establishes that Main Brothers is not subject to successor liability. Main Brothers does not rely in its arguments on the second link in the chain of successor liability, the stock purchase agreement between Ackner and Main Brothers.