Avamer 57 Fee LLC v Hunter Boot USA LLC (2025 NY Slip Op 04607)

Avamer 57 Fee LLC v Hunter Boot USA LLC

2025 NY Slip Op 04607

Decided on August 07, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 07, 2025

Before: Moulton, J.P., Kennedy, Gesmer, Mendez, Rodriguez, JJ. 

Index No. 653898/23|Appeal No. 3878|Case No. 2024-04219|

[*1]Avamer 57 Fee LLC, Plaintiff-Appellant,
v
Hunter Boot USA LLC, et al., Defendants, Authentic Brands Group LLC, et al., Defendants-Respondents.

Nesenoff & Miltenberg, LLP, New York (Kara L. Gorycki of counsel), for appellant.
Katten Muchin Rosenman LLP, New York (Anthony L. Paccione of counsel), for Authentic Brands Group LLC, respondent.
Nixon Peabody LLP, New York (Richard J. Shore of counsel), for Marc Fisher LLC, respondent.

Judgment (denominated an 0rder), Supreme Court, New York County (Lyle E. Frank, J.), entered June 25, 2024, which granted the motions of defendants Authentic Brands Group LLC (Authentic) and Marc Fisher LLC (Fisher) to dismiss the complaint in its entirety as against them, modified, on the law, to deny the motions to dismiss the third cause of action for breach of contract against Authentic and Fisher, and otherwise affirmed, without costs.
Authentic and Fisher purchased the assets of Hunter Boot USA LLC (Hunter US) pursuant to two separate asset purchase agreements. Plaintiff asserts a breach of contract claim against Authentic and Fisher for breach of the commercial lease between plaintiff as lessor and Hunter US as lessee.
"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction . . . . We accept the facts as alleged in the complaint as true [and] accord plaintiffs the benefit of every possible favorable inference" (Leon v Martinez, 84 NY2d 83, 87 [1994]). On a motion to dismiss for failure to state a cause of action (CPLR 3211[a][7]), "we address only the pleading itself, keeping in mind that the motion should be denied if the facts alleged . . . fit within any cognizable legal theory" (Tap Holdings, LLC v Orix Fin. Corp., 109 AD3d 167, 173-174 [1st Dept 2013]). A motion to dismiss based on documentary evidence (CPLR 3211[a][1]) "may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]).
Supreme Court should not have granted the motions to dismiss the breach of contract claim against Authentic and Fisher for failure to state a cause of action or based on documentary evidence. There are four exceptions to the general rule that a successor corporation is not liable for the liabilities of its predecessor: (1) express or implied assumption of the predecessor's liabilities; (2) de facto merger; (3) entry into a fraudulent transaction undertaken to escape liability; or (4) the successor is a "mere continuation" of the predecessor (see Schumacher v Richards Shear Co., 59 NY2d 239, 245 [1983]; Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d 116, 126 [1st Dept 2020]).
Plaintiff does not claim that the purchase agreements included an assumption of Hunter US's liabilities. Furthermore, plaintiff concedes in its reply brief that, since it did not allege continuity of ownership, the de facto merger doctrine does not apply in this case (see Oorah, Inc. v Covista Communications, Inc., 139 AD3d 444, 445 [1st Dept 2016]). Accordingly, neither the assumption of liabilities exception nor the de facto merger exception is relevant here.
Plaintiff failed to sufficiently allege a breach of contract claim under the fraud exception to the rule against successor liability. Plaintiff's allegation that Authentic and Fisher structured their purchase of Hunter US's assets in a manner that avoided Hunter US's obligations under the lease was not an allegation of fraud, let alone a particularized allegation of fraud. Moreover, plaintiff did not allege that the consideration Authentic and Fisher paid for Hunter US's assets was inadequate, or that Authentic and Fisher rendered Hunter US judgment proof (see 47 E. 34th St. [NY] L.P. v BridgeStreet Worldwide, Inc., 219 AD3d 1196, 1200, 1205[1st Dept 2023]). Authentic and Fisher also did not conceal their transaction, which was publicized.
However, we find that plaintiff has sufficiently stated a cause of action for breach of contract against Authentic and Fisher based on the "mere continuation" exception to the rule against successor liability. "Although no one factor is dispositive," courts determining whether a successor corporation is a "mere continuation" of its predecessor have considered whether: (1) all or substantially all assets are transferred to the successor corporation; (2) the predecessor corporation has been effectively extinguished following the transaction; (3) the successor has assumed an identical or nearly identical name; (4) the successor has retained one or more of the same corporate officers, directors, and/or employees; and (5) the successor has continued the same business (Miot v Miot, 24 Misc 3d 1224[A], 2009 NY Slip Op 51605[U], *6 [Sup Ct, NY County 2009], affd 78 AD3d 464 [1st Dept 2010]; see also Tap Holdings, 109 AD3d at 176; Burgos v Pulse Combustion, 227 AD2d 295, 295-296 [1st Dept 1996]).
Here, as to the first factor, plaintiff has pleaded that Fisher and Authentic purchased substantially all of Hunter US's assets. Furthermore, plaintiff has pleaded that it first became aware that Fisher and Authentic had purchased Hunter US's assets in early June, when a Fisher employee contacted plaintiff's agent and said that Hunter US would be "wind[ing] down" and inquiring about whether Fisher could lease the space which had been leased by Hunter. This is consistent with Fisher's asset purchase agreement, which provides that, "[i]n the event [Fisher] reaches an agreement with the landlord of the Premises to use the Premises . . . then [Hunter US] shall ensure that all nonshowroom related furniture and fitting remain at the Premises through the end of [Fisher's] tenancy." It is also consistent with paragraph 48(q)(1) of Hunter US's lease which permitted it to assign the lease without plaintiff's permission in the event of a bona fide sale of substantially all of Hunter US's assets, and, in that event, made Hunter US's transferees jointly and severally liable for its lease obligations. Consistent with this arrangement, the complaint also pleads that Fisher took steps to enforce its right to use the leased premises, in addition to the other assets it purchased.[FN1] The purchase agreements did not utterly refute this allegation (see Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc., 120 AD3d 431, 433 [1st Dept 2014]).
Neither the motion court nor defendants cite to any authority prohibiting application of mere continuation successor liability where more than one company has acquired the assets of the predecessor. We disagree with the dissent to the extent that it asserts that Schumacher (59 NY2d 239) stands for the proposition that the existence of more than one successor corporation necessarily bars application of the mere continuation doctrine. In Schumacher, there was only one successor (id. at 242). Accordingly, it does not address the situation in the facts pleaded by plaintiff in this case.
Here, plaintiff has pleaded that Fisher is Authentic's longtime US partner in the marketing and sales of footwear brands acquired by Authentic, and that Authentic and Fisher purchased substantially all of Hunter US's assets. Specifically, Authentic purchased Hunter US's non-footwear stock and intellectual property, including its domain names, social media handles, and trademark registrations, and Fisher purchased Hunter US's footwear stock, fixtures in the subject premises, and personalization machine located in Illinois. Authentic acted as the guarantor on Fisher's purchase agreement with Hunter US pursuant to a guaranty which states that Fisher's entry into that agreement is "of direct benefit to" Authentic. Fisher's purchase agreement designates Authentic as the "principal obligor" with respect to Fisher's obligations. Plaintiff further alleges that Fisher acted as Authentic's agent in Fisher's purchase of the assets of Hunter US, and that Authentic controlled the transaction between Fisher and Hunter US. Under these circumstances and for the purposes of this motion to dismiss, the fact that more than one company was involved in the purchase of substantially all of Hunter US's assets does not utterly refute the possibility that either or both defendants could be held liable under a mere continuation theory.
As to the second factor, plaintiff has pleaded that, in August 2023, Hunter US advised plaintiff it would "imminently dissolve and wind up its affairs" and that it did "not have sufficient funds to make any further payments, including rent payments." More specifically, the August 2, 2023 letter from Hunter US to plaintiff, attached to the complaint, states that Hunter US "was operating in a negative cash flow position, and ultimately depleted the liquidity necessary to continue operations." That is a sufficient allegation that the predecessor corporation was effectively extinguished following the purchase of its assets (see Tap Holdings, 109 AD3d at 176 [allegations that predecessor's sole employee was a dissolution officer and predecessor was no longer in good corporate standing were sufficient to allege predecessor was "effectively extinguished" for purposes of motion to dismiss]). We respectfully disagree with the dissent's characterization of Hunter US's statements as constituting a mere intention not to pay rent or a "barebone allegation" by plaintiff. We also disagree that the complaint fails to allege that Hunter US ceased operating. Neither Authentic nor Fisher dispute the complaint's allegations in this respect. Furthermore, while our colleague notes that rent was paid for June and July 2023, the complaint does not state who paid rent for those months. Nor is there any indication that Hunter US paid rent after its August 2023 notice to plaintiff that it would no longer do so.
Furthermore, the motion court should not have found that documentary evidence establishes that Hunter US received adequate consideration in exchange for the sale of its assets, since neither purchase agreement states what consideration was paid or to whom it was paid. In contrast, plaintiff pleads that any proceeds from the purchase of Hunter US assets was paid to its parent company in the United Kingdom. Whether Hunter US "survived the . . . purchase agreement as a distinct, albeit meager, entity" (Schumacher, 59 NY2d at 245) sufficiently to defeat plaintiff's mere continuation claim is more appropriately left for determination on a post-discovery motion for summary judgment (see Tap Holdings, 109 AD3d at 176).
We respectfully disagree with the dissent that Schumacher (59 NY2d 239) requires dismissal of the complaint here because the predecessor corporation was not yet, at the time the complaint was filed, completely "extinguished" (id. at 245). Schumacher did not involve a CPLR 3211 dismissal motion, but rather a motion for summary judgment, with its higher evidentiary burden. The Court found that "[n]othing in the record suggests [successor] liability" (id.). Similarly, the other cases from this Court cited by the dissent on this issue also involved a higher evidentiary burden because each involved either a summary judgment motion (47 E. 34th St. [NY] L.P. v BridgeStreet Worldwide, Inc., 219 AD3d 1196 [1st Dept 2023]; Ring v Elizabeth Found. for the Arts, 136 AD3d 525 [1st Dept 2016]) or a CPLR 4401 trial motion (Highland Crusader Offshore Partners, L.P. v Celtic Pharma Phinco B.V., 205 AD3d 520 [1st Dept 2022]). In contrast, Tap Holdings (109 AD3d 167), like this case, involved a motion to dismiss. We find that here, as in Tap Holdings, plaintiff has sufficiently alleged that the predecessor corporation "has been effectively extinguished for purposes of application of the doctrine" to survive a motion to dismiss (id. at 176).
As to the third factor, plaintiff alleges that Authentic and Fisher assumed Hunter US's name (see Burgos, 227 AD2d at 295-296). Specifically, the complaint alleges that "Authentic purchased the Hunter Boot brand, goodwill, intellectual property[,] and ability to use the Hunter Boot name."
As to the fourth factor, plaintiff alleges that, as of June 2023, Authentic had stated publicly that the purchase of Hunter US's assets would not necessarily involve leadership changes, as the business "transitions into a licensing model" (see Burgos, 227 AD2d at 296 ["at least one officer from the predecessor corporation was retained by" the successor corporation]).
As to the fifth factor, plaintiff alleges that, following their acquisition of Hunter US's assets, Authentic and Fisher continued Hunter US's operations, including at the premises which is the subject of the commercial lease at issue (see generally Miot, 78 AD3d at 464-465). Specifically, plaintiff alleges that a Fisher employee told plaintiff that Fisher planned to use the subject premises for a three-month period, that the computer systems at the premises were upgraded following the asset sale so that Authentic and Fisher could continue operating Hunter US's business at that location, and that the premises had not been vacated as of August 13, 2023. Furthermore, Authentic's purchase agreement gives Hunter US a limited license to use the Hunter brand to sell off some of its stock in another location, provided that Hunter US may not use the term "'going out of business' or words or slogans having similar effect."[FN2]
Accordingly, plaintiff has sufficiently pleaded a cause of action for breach of the commercial lease against Authentic and Fisher under a mere continuation theory.
The cause of action for tortious interference with contract was properly dismissed because plaintiff failed to sufficiently allege that Hunter US would not have breached the lease but for Authentic's and Fisher's conduct (see Burrowes v Combs, 25 AD3d 370, 373 [1st Dept 2006], lv denied 7 NY3d 704 [2006]). Plaintiff's allegation that Authentic and Fisher structured the transaction to avoid assuming any of Hunter US's lease obligations does not show that the transaction caused Hunter US to breach the lease or allowed it to avoid liability under the lease. Nor does the requirement in the asset purchase agreement that Hunter US provide global releases from the secured creditors of its parent company support plaintiff's allegations that the asset purchase transaction caused it to breach its lease. Rather, the requirement shows at most that Authentic and
Fisher were purchasing the assets with clean title.
We have considered plaintiff's remaining contentions and find them unavailing.
All concur except for Moulton and Kennedy, JJ. who dissent in part in a memorandum by Kennedy, J. as follows:

Kennedy, J. (dissenting in part),

I agree with most of the majority's analysis and dissent only on the issue of whether the mere continuation doctrine applies in this case. I conclude that it does not and, as a result, would affirm the dismissal of the action against defendants Authentic Brands Group LLC (Authentic) and Marc Fisher LLC (Fisher).
This action arises from breach of a commercial lease between plaintiff, as landlord, and defendant Hunter Boot USA LLC (Hunter), as tenant of a showroom and office space located at 57 West 57th Street, in Manhattan (the premises). 
In June 2023, Hunter's parent company entered a British administration process equivalent to bankruptcy. Defendants Authentic and Fisher, each a Delaware company with principal places of business in New York and Connecticut, purchased assets from Hunter through that administration process. Specifically, Authentic purchased "(a) all stock . . . which is not footwear stock, including apparel, soft accessories stock and hard accessories stock, owned . . . by [Hunter], relating exclusively to the Business and situated in or in transit to the United States of America as at the date of [the] Agreement . . . ; and (b) Hunter Boot IP." Fisher purchased "(a) all stock . . . which is footwear owned . . . by [Hunter], relating exclusively to [Hunter's business] . . . ; (b) all removable fixtures and fittings located in [Hunter]'s showroom . . . at [the premises] . . . ; [and] (c) [a] certain personalization machine . . . located in [Hunter]'s distribution center" in Illinois.
Approximately two months after that transaction, Hunter indicated it would stop paying rent. Plaintiff commenced this action alleging, among other things, that Authentic and Fisher, as successors, were liable for Hunter's breach and they tortiously interfered with the lease.
One exception to the general rule that a corporation which acquires the assets of another is not liable for its predecessor's torts or breaches of contract is when "the purchasing corporation [is] a mere continuation of the selling corporation" (Schumacher v Richards Shear Co., 59 NY2d 239, 245 [1983]). Plaintiff maintains that successor liability was pleaded against Authentic and Fisher because they are a mere continuation of Hunter.
Courts consider the following factors in determining whether a successor corporation was a mere continuation of its predecessor: "(1) all or substantially all assets are transferred to the successor corporation, (2) only one corporation exists after the transfer, (3) assumption of an identical or nearly identical name, (4) retention of the same corporate officers and/or directors, and (5) continuation of the same business" (Miot v Miot, 24 Misc 3d 1224[A], 2009 NY Slip Op 51605[U], *6 [Sup Ct, NY County 2009], affd 78 AD3d 464 [1st Dept 2010]; see e.g. Burgos v Pulse Combustion, 227 AD2d 295, 295-296 [1st Dept 1996]).
With respect to the second factor, "the predecessor corporation must be extinguished" to properly plead or establish the mere continuation exception (Schumacher, 59 NY2d at 245). Here, Authentic and Fisher are two separate entities, which purchased distinct assets of Hunter, under two separate asset purchase agreements. Hunter, as seller, survived the purchase agreements, "as a distinct, albeit [allegedly] meager, entity" (id.). Accordingly, the undisputed fact that more than one corporation existed after Hunter completed the asset purchase transaction is dispositive of the mere continuation claim (see 47 E. 34th St. [NY] L.P. v BridgeStreet Worldwide, Inc., 219 AD3d 1196, 1200 [1st Dept 2023]; Highland Crusader Offshore Partners, L.P. v Celtic Pharma Phinco B.V., 205 AD3d 520, 523 [1st Dept 2022]; Ring v Elizabeth Found. for the Arts, 136 AD3d 525, 526 [1st Dept 2016]; Ivory Dev., LLC v Roe, 135 AD3d 1216, 1222-1223 [3d Dept 2016]; State Farm Fire & Cas. Co. v Main Bros. Oil Co., 101 AD3d 1575, 1577 [3d Dept 2012]).
Contrary to plaintiff's contention, Lippens v Winkler Backereitechnik GmbH (138 AD3d 1507 [4th Dept 2016]) is not instructive on this issue. In Lippens, a personal injury action, the plaintiff alleged successor liability claims against two entities which purchased distinct assets of a predecessor company (Lippens v Winkler Intl. Corp., 47 Misc 3d 1224[A], 2015 NY Slip Op 50835[U] [Sup Ct, Monroe County 2015]).
As it specifically relates to the mere continuation doctrine, the motion court in Lippens reaffirmed the well-settled principle that "[t]he 'mere continuation' exception 'refers to corporate reorganization . . . where only one corporation survives the transaction; the predecessor corporation must be extinguished'" (id. at *10, quoting Schumacher, 59 NY2d at 245). The motion court in Lippens denied summary judgment to the purchasing entities/defendants on this issue, finding there were issues of fact as to when the predecessor companies ceased to exist (Lippens, 2015 NY Slip Op 50835[U], *10, 12). The Fourth Department affirmed that part of the appealed-from order in Lippens, holding only that "on this record, [purchasing entity] failed to establish that it was not a mere continuation of [the predecessor entity]" (138 AD3d 1507, 1510). Accordingly, Lippens does not stand for the proposition that under the mere continuation doctrine, multiple entities may survive after an asset purchase from the selling entity, as plaintiff contends. Instead, Lippens supports the well-settled principle set forth in Schumacher, and defendants' motion in Lippens wasdenied only because it was unclear on that record when the relevant entity ceased to exist (Lippens, 2015 NY Slip Op 50835[U], *10).
Conversely, here, there is no dispute that Hunter remained in existence after the transaction. Plaintiff acknowledges that Authentic and Fisher were different corporations, with principal places of business in New York and Connecticut, and they entered different purchase agreements with Hunter, which gave different roles to Authentic and Fisher. Accordingly, given the continued existence of three entities after the asset purchase, the complaint does not set forth the type of "corporate reorganization . . . where only one corporation survives the transaction" to support the application of the mere continuation exception to the general rule against successor liability (Mitchell v Suburban Propane Gas Corp., 182 AD2d 934, 935 [3d Dept 1992], quoting Schumacher, 59 NY2d at 245).
The majority contends that reliance on Schumacher does not support dismissal because Schumacher, along with other precedent cited in this dissent, did not involve a CPLR 3211 dismissal motion. However, in State Farm Fire & Cas. Co. v Main Bros. Oil Co. (101 AD3d 1575), the Third Department reviewed a motion to dismiss and summarily concluded that "'mere continuation,' cannot apply because it requires that the selling/predecessor corporation be fully extinguished for there to be successor liability, and no dispute exists that [the predecessor] continued in business after the transfer of assets to [successor]" (id. at 1577). Moreover, and regardless of the evidentiary burden, the well-settled legal principles set forth in Schumacher remain, which necessarily includes the requirement that one corporate entity remain after the transaction at issue. The majority contends that Schumacher is distinguishable because there, only one successor entity was involved, whereas here, two successor entities purchased assets of Hunter. This distinction is misplaced since Schumacher clearly concludes that it is the predecessor company that must be extinguished, which has not occurred herein.
Nor does the complaint allege that Hunter was "effectively extinguished" as was the case in Tap Holdings, LLC v Orix Fin. Corp. (109 AD3d 167 [1st Dept 2013]), another case that plaintiff relies upon. The Tap court's application of the mere continuation doctrine was based on significantly broader allegations of corporate continuation, including: (1) the successor entity's purchase of all of the predecessor's assets; (2) employ of all the predecessor's employees on substantially similar terms; (3) the successor's assumption of all of the predecessor's liabilities; (4) the successor's contractual obligation to fund the dissolution of the predecessor; (5) the predecessor executives assumed their same positions with the successor and received equity in the successor equivalent to or in excess of their equity in the predecessor company (id. at 171-172). The cause of action alleged that, after the purchase transaction of the predecessor's assets, the successor's "management, personnel, physical location, good will, web domain, phone number, and general business operation, etc. were (and remain) all the same" under the new corporation (id. at 172). In short, the successor in Tap was created for and operated in identical fashion as its predecessor. The complaint herein fails to allege that Authentic and Fisher acquired all aspects of Hunter's operations (see id. at 176). Indeed, the complaint fails to allege that they were obligated to assume Hunter's employees, accounts receivable, contracts, the instant lease, or liabilities, or allege any facts substantiating the claim that Hunter was subsumed into the operations of Authentic and/or Fisher.[FN3] Nor can it, given that the asset purchase agreements are clear in the specific assets and assumptions passed to Authentic and Fisher.
Additionally, in Tap, the purchased company was no longer in good standing in Delaware and its sole employee was a "dissolution officer." Similarly, in Lippens, one of the buyers was specifically and contractually "responsible for dissolving [the entity from which assets were purchased], and it took over the liability insurance policy as well as the lease for [seller entity's] facility" (Lippens, 2015 NY Slip Op 50835[U], *1). Here, there was no such formal dissolution or merger. Hunter continued its operations, maintained its registration with the State of Delaware, paid rent after the transaction and continued to occupy the premises, and plaintiff does not allege otherwise. Plaintiff's barebone allegation that Hunter advised plaintiff it was winding up its affairs is distinguishable from the circumstances in Tap and Lippens. Similarly distinguishable is the majority's reliance on the provision in Fisher's asset purchase agreement that stated that Fisher may attempt to reach an agreement with plaintiff to use the premises. This permissive provision does not obligate the successor entities to assume any of Hunter's obligations, including its lease with plaintiff and in no way alleges that Authentic or Fisher contractually or formally acquired Hunter's business location at the premises.
For the foregoing reasons, even viewing the complaint in a light most favorable to plaintiff, the undisputed fact that Hunter survived the asset purchase transactions refutes the successor liability claims against Authentic and Fisher pursuant to the mere continuation doctrine. Accordingly, I dissent as to that issue and otherwise join the majority as it relates to the remaining issues before this Court. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 7, 2025

Footnotes

Footnote 1: Accordingly, we disagree with our dissenting colleagues that plaintiff has not sufficiently pleaded that Authentic and Fisher acquired plaintiff's business location. Moreover, even if we agreed with the dissent, this is only one factor to be considered, and "no one factor is dispositive" (Miot, 2009 NY Slip Op 51605[U], *6).

Footnote 2: Accordingly, we disagree with the dissent's attempt to distinguish Tap Holdings from this case because, as discussed above, we find that plaintiff has adequately pleaded that Authentic and Fisher acquired Hunter US's business location, employees, management, and good will (see Tap Holdings, 109 AD3d at 176). 

Footnote 3: See e.g. Lippens, 18 NY3d at *2.