NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0477n.06

**Case No. 15-4367**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Aug 16, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DARRELL HOLLAND, JR.; BRENDA BALDWIN; ANTHONY SOTO; JOHN DELL; JAMES MORALES; DAVID LOCKETT, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| FCA US LLC, aka Fiat Chrysler Automobiles U.S., LLC, fka Chrysler Group, LLC, | ) ) ) | |
| Defendant-Appellee. | ) ) | O P I N I O N |

BEFORE:  CLAY, ROGERS, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.**  The Plaintiffs sued FCA US LLC (FCA) after the engine cradles in their Chrysler Pacifica vehicles began to "prematurely rust, corrode and/or perforate." R. 10, Amended Complaint at 2, Page ID 114.  On November 16, 2015, the district court granted FCA's motion for judgment on the pleadings, finding that the Plaintiffs had failed to "allege a relationship with FCA which would [have] created a duty on the part of FCA to warn Plaintiffs of the alleged defect or pay for repairs." R. 44, Order at 8, Page ID 855.  We hold that the Plaintiffs failed to plead sufficient facts to demonstrate that FCA had voluntarily undertaken a duty to repair and failed to otherwise show a sufficient economic relationship with FCA to create a duty to warn.  We need not decide whether FCA had a duty to warn under Ohio law based on

its knowledge of the alleged defect alone, because the Plaintiffs failed to plead sufficient facts to demonstrate any causation between any failure to warn and their injuries. Accordingly, we AFFIRM the district court's granting of the motion for judgment on the pleadings.

## I. BACKGROUND

Darrell Holland, Jr., John Dell, David Lockett, Brenda Baldwin, Anthony Soto, and James Morales filed their First Amended Class Action Complaint (Complaint) against FCA on April 6, 2015. The Plaintiffs and putative class members are owners of 2004–2008 Chrysler Pacifica vehicles "manufactured with Chrysler CS Platform engine cradles that prematurely rust, corrode and/or perforate creating a substantial risk of, or causing the engine to fall out of the vehicle." R. 10, Amended Complaint at 1–2, Page ID 113–14. FCA "is the successor to Chrysler Group LLC . . . and Fiat Chrysler Automobiles," formed in the aftermath of the Chrysler bankruptcy. *Id.* at 4, Page ID 116.

On or about October 23, 2010, FCA issued a Technical Service Bulletin alerting owners and mechanics to check the engine cradles and suspensions of Chrysler Pacificas for perforation and possible replacement. *Id.* at 5, Page ID 117; *see also* R. 9-2, TSB at 6, Page ID 102. The Bulletin indicated that it only applied to "certain 2004–2005 Chrysler Pacifica V6-3.5L VIN 4 vehicles" and was limited to "vehicles in the Canadian Market and in U.S. salt belt states": Connecticut, Delaware, Illinois, Indiana, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New York, Ohio, Pennsylvania, Rhode Island, Vermont, West Virginia, and Wisconsin. R. 10, Amended Complaint at 5, Page ID 117.

On November 9, 2010, FCA "issued a letter expressly extending warranty coverage for 2004–2005 Chrysler Pacificas." *Id.* The Plaintiffs never alleged that they had received this letter. The Complaint specifically notes that "Defendant FCA has recently claimed that this

letter was only sent to owners of Pacificas manufactured in 'the window';[1] however, this claim is not capable of verification by Plaintiffs." *Id.* at 6, Page ID 118.

On March 16, 2012, FCA issued a Technical Service Bulletin which stated that the engine cradle defect applied only to Chrysler Pacificas in the salt belt states that were manufactured in a six-week window from February 23, 2004 to March 31, 2004. *Id.*

Each of the individually named plaintiffs owns a Pacifica alleged to have an engine cradle defect. *Id.* at 10–12, Page ID 122–24. They have all either paid for repairs to the engine cradle or have been advised by mechanics that such repairs are necessary. However, none of the Plaintiffs' vehicles were manufactured within the six-week window identified by FCA in the March 2012 Technical Service Bulletin.

The Plaintiffs allege that "throughout the United States, owners of over 322,000 Pacificas, model years 2004–2008, have been discovering that their vehicles' engine cradles are severely rusted and corroded, many to the point that their vehicles have been deemed unsafe to drive." *Id.* at 6, Page ID 118. Consequently, Plaintiffs allege that "thousands of Pacifica owners whose vehicles were manufactured outside the six week timeframe indicated by FCA have been forced to either stop using their Pacificas or pay for extensive repairs out of pocket if they wish to continue using their vehicles without risk that their engine will fall out," and thousands of other owners "are currently driving their vehicles while completely oblivious to the dangerous defect hidden beneath their engines." *Id.* at 6–7, Page ID 118–19.

The Plaintiffs filed suit against FCA, raising various state claims and seeking class certification. FCA filed a motion to dismiss and a motion for summary judgment. On September 3, 2015, the district court denied the motion to dismiss as moot "as indicated by the

---

[1] FCA determined that there were defects in the engine cradles' coating thickness in 2004–2005 Pacificas manufactured in a six-week window.

Parties during the June 26, 2015 status conference." R. 35, Order at 11, Page ID 615. The district court also denied the motion for summary judgment without prejudice because "[a] pre-discovery motion for summary judgment is premature, as granting summary judgment absent any opportunity for discovery offends concepts of fundamental fairness." *Id.* at 10, Page ID 614 (citation and internal quotation marks omitted).

On September 17, 2015, FCA filed a motion for judgment on the pleadings, arguing that FCA had no legal duty to warn the Plaintiffs of or to repair the alleged engine cradle defect. The district court granted the motion on November 16, 2015. R. 44, Order at 9, Page ID 856. The Plaintiffs then brought this timely appeal, arguing that they pleaded sufficient facts to establish that FCA owed them a duty to warn and a duty to address the defect.

The Plaintiffs raise two arguments on appeal: (1) the district court established the law of the case when it denied FCA's motion for summary judgment, and, even if not, (2) the district court erred in granting FCA's motion for judgment on the pleadings because the Plaintiffs pleaded sufficient facts to state claims upon which relief could be granted.

## II.  LAW OF THE CASE

The Plaintiffs first argue that the district court was prohibited from granting FCA's motion for judgment on the pleadings because it had already denied FCA's motion for summary judgment. On September 3, 2015, the district court denied the defendant's motion for summary judgment, ruling it premature absent discovery. R. 35, Order at 10, Page ID 614. The denial of the summary judgment motion, the Plaintiffs argue, established the law of the case.

As an initial matter, we note that the Plaintiffs did not raise this argument in the district court.[2] "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (quoting *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997)).

Regardless, the Plaintiffs' argument fails because the district court's denial of the summary judgment motion without prejudice did not establish the law of the case. "The doctrine of law of the case comes into play only with respect to issues *previously determined.*" *Holloway v. Brush*, 220 F.3d 767, 777 (6th Cir. 2000) (en banc) (emphasis added) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 (1979)). Thus, the doctrine "applies only to issues that have been decided explicitly (or by necessary implication) by a court." *Bowles v. Russell*, 432 F.3d 668, 676–77 (6th Cir. 2005). Despite the Plaintiffs' claims to the contrary, the district court ruled on the summary judgment motion only because discovery had yet to be conducted. R. 35, Order at 10, Page ID 614 ("A pre-discovery motion for summary judgment is premature, as granting summary judgment absent any opportunity for discovery offends concepts of fundamental fairness." (citation and internal quotation marks omitted)). Such a ruling has no impact on a subsequent decision on whether the *pleadings* alleged sufficient factual matters to render the claims plausible. Accordingly, the law of the case doctrine did not preclude the district court from granting FCA's motion for judgment on the pleadings.

---

[2] Had the Plaintiffs raised the argument below, we would have reviewed the district court's application of the law of the case doctrine for an abuse of discretion. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

### III.   JUDGMENT ON THE PLEADINGS

The Plaintiffs primarily argue that the district court erred in granting FCA's motion for judgment on the pleadings.  We review *de novo* a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), pursuant to the same standards that should have been applied in the district court.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz*, 592 F.3d at 722 (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citations and internal quotation marks omitted).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible."  *Fritz*, 592 F.3d at 722 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  But, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient."  *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)); *see also Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (noting that although we accept all of the plaintiff's factual allegations as true, "we need not accept as true legal conclusions or unwarranted factual inferences").

To survive a motion to dismiss a claim for failure to warn and failure to repair, the plaintiffs must show that FCA had a duty to warn and a duty to repair. According to the Ohio Supreme Court, the question of whether a duty exists is a question of law for the court to decide. *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). The Plaintiffs argue (1) that FCA voluntarily undertook a duty to repair, (2) that FCA had a duty to warn based on its economic relationship with the Plaintiffs, and (3) that FCA had a duty to warn based on its knowledge of the alleged defect in its predecessor's product.

### A. Voluntary Undertaking

The Plaintiffs first argue that FCA voluntarily undertook a duty to repair. The Plaintiffs argue that their allegations that FCA issued and then rescinded an extended warranty that would have covered repairs for the class vehicles were sufficient to survive FCA's motion for judgment on the pleadings. In their briefs and at oral argument, the Plaintiffs have identified two sources of the alleged extended warranty: a Technical Service Bulletin and a letter. The Complaint's only mentions of the issuance of the warranty, however, are in its discussion of FCA's November 9, 2010 letter—a letter that the Plaintiffs never alleged that they received. *See* R. 10, Amended Complaint at 5–6, Page ID 117–18.

*Technical Service Bulletin.* In their Complaint, the Plaintiffs referred to only two Technical Service Bulletins: one issued in October 2010 and one issued in March 2012. *Id.* But the Plaintiffs did not allege that either of these Technical Service Bulletins extended their warranty. *See id.* at 5, Page ID 117 ("On October 23, 2010, FCA (its predecessor) issued a TSB concerning 'Vehicle Vibration and/or Shake' alerting owners and mechanics to check the engine cradles and front suspension of certain 2004–2005 Chrysler Pacifica V6-3.5L VIN 4 vehicles for perforation and possible replacement."); *id.* at 6, Page ID 118 ("Approximately a year and a half

later, on March 16, 2012, FCA (its predecessor) issued another TSB which expressly superseded the October 2010 TSB. In this TSB FCA stated, for the very first time, that the new TSB, and consequently the engine cradle defect and extended warranty, applied only to 2004–2005 Chrysler Pacificas in the salt belt states that were manufactured in a six week window in 2004: February 23, 2004 through March 31, 2004."). And a review of the record reveals that neither of these Technical Service Bulletins extended a warranty to the Plaintiffs. *See* R. 9-2, October TSB at 6–7, Page ID 102–03; R. 9-2, March TSB at 14–16, Page ID 110–12.

The Plaintiffs did not allege where, when, or how FCA extended a warranty other than by stating that "FCA downplayed the prevalence of the defect by issuing, and then negligently and carelessly rescinding the extended warranty (issued in November, 2010) that would have more adequately remedied the defect," R. 10, Amended Complaint at 10, Page ID 122. But the Plaintiffs do not ever refer in their Complaint to a Technical Service Bulletin issued in *November* 2010. *See id.*

*Letter.* The Complaint stated that "[o]n November 9, 2010, FCA (its predecessor) issued a letter expressly extending warranty coverage for 2004–2005 Chrysler Pacificas." R. 10, Amended Complaint at 5, Page ID 117. The letter explicitly noted that FCA was "extending the warranty period on *your* front engine cradle." *Id.* (emphasis added). By its own text, the letter does not purport to extend the warranty to vehicle owners beyond those to whom the letter was sent. The Plaintiffs noted that "Defendant FCA has recently claimed that this letter was only sent to owners of Pacificas manufactured in 'the window';[3] however, this claim is not capable of

---

[3] The Plaintiffs also argue that the district court improperly considered matters outside of the pleadings—specifically, a declaration from an FCA employee stating that the extended warranty was only issued to vehicles manufactured in the six-week window. R. 9-2, Declaration at 1–4, Page ID 97–100. There is simply no evidence that the district court considered matters outside

verification by Plaintiffs." *Id.* at 6 n.6, Page ID 118. The Plaintiffs, however, *are* capable of verifying whether they received the letter, and yet they did not state anywhere in the Complaint that they did. And, at oral argument, the Plaintiffs' counsel admitted that his clients had not received the letter. Thus, the district court did not err in stating that "[n]one of the Plaintiffs' vehicles were manufactured within the six-week window identified by FCA in the March 16, 2012 TSB; none were included in the extended warranty group; and, none received an extended warranty letter." R. 44, Order at 4, Page ID 851.

Therefore, even considering the Plaintiffs' argument that a Technical Service Bulletin and the November letter together demonstrated FCA assumed a duty to repair their vehicles, the Plaintiffs have failed to allege sufficient facts to state a claim under this theory.

### B.    Economic Relationship

The Plaintiffs also argue that FCA had a duty to warn them and other putative class members of the alleged defects because the Plaintiffs and FCA had an economic relationship. In their briefs, the parties agree that *Burton v. Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013), provides the relevant standard. In *Burton*, the court stated that:

> The "duty to warn" raises a more difficult question. New Chrysler did not assume Old Carco's duty to warn its customers about the "fuel spit back" problem, and any claim based on the breach of Old Carco's duty to warn is barred by the Sale Order. Nevertheless, the law may impose a separate duty to warn on New Chrysler. Here, New Chrysler purchased Old Carco's assets. Succession alone does not impose a duty to warn a predecessor's customers of pre-existing defects, *Florom v. Elliott Mfg.*, 867 F.2d 570, 577 (10th Cir. 1989); *Travis v. Harris Corp.*, 565 F.2d 443, 448–49 (7th Cir. 1977), but the duty may arise where the successor (1) succeeds to the predecessor's service contracts that cover the particular machine, (2) actually services the machine, (3) is aware of the defect

---

of the pleadings. We note too that the Plaintiffs referred to the declaration in their amended complaint.

and (4) knows the location of the machine's owner. *Florom*, 867 F.2d at 577; *Polius v. Clark Equip. Co.*, 802 F.2d 75, 84 (3d Cir. 1986); *Travis*, 565 F.2d at 449; *Schumacher v. Richards Shear Co.*, . . . 451 N.E.2d 195, 199 ([N.Y.] 1983); Restatement (Third) of Torts § 13 cmt. b (1998). In these circumstances, the law imposes a duty to warn because the successor has entered into a relationship with the customer and derives an actual or potential economic benefit. *Schumacher*, 451 N.E.2d at 199.

*Id.*

The Plaintiffs argue that they have an economic relationship with FCA because "FCA's decision to extend the warranty on 2004–2005 Pacificas was, Plaintiffs allege, grounded upon its duty to address product defects and its efforts to curry repeat business from former Chrysler customers." Appellant Br. 25; *see also* Reply Br. 6–7 ("Plaintiffs alleged that FCA extended the warranty to at least all 2004 and 2005 Pacificas to satisfy its duty to warn of the defect and/or to garner repeat business from existing Chrysler customers."). But, as discussed above, the Plaintiffs have not sufficiently alleged that they had received an extended warranty from FCA, and so the extended warranty cannot form the basis of an economic relationship.

The Plaintiffs also argue that "Defendant should also expect that former Chrysler vehicle owners would purchase new Chrysler cars." Appellant Br. 11. Merely owning a product is insufficient to demonstrate that a consumer has an economic relationship with the seller's successor company. *Burton*, 492 B.R. at 405 ("Succession alone does not impose a duty to warn a predecessor's customers of pre-existing defects . . . ."). It would swallow the rule if a customer had a sufficient relationship with a successor because it owned the predecessor's product. Thus, FCA never "entered into" an economic relationship with the Plaintiffs. *Burton*, 492 B.R. at 405.

### C.    Knowledge

The Plaintiffs' final argument is that FCA had an independent duty to warn under Ohio law because its predecessor's product defects were brought to its attention.[4]  In support, the Plaintiffs cite *Flaugher v. Cone Automatic Machine Co.*, 507 N.E.2d 331, 339 (Ohio 1987), which held "that a successor corporation has no duty to warn of defects in products manufactured by its predecessor unless the successor is shown to have had pre-existing knowledge, actual or constructive, of the particular defect alleged to exist."  Because the Ohio Supreme Court held that the defendant in *Flaugher* did not have the requisite knowledge, it did not elaborate on whether knowledge *alone* was sufficient to establish successor liability under Ohio law, or whether knowledge was merely a necessary element.  *See id.* at 337–38.

We need not decide if the Plaintiffs have pleaded sufficient facts to show a duty under Ohio law, because the Plaintiffs did not plead sufficient facts to show that FCA's failure to warn caused their injuries.  *See Hargis v. Doe*, 443 N.E.2d 1008, 1010 (Ohio Ct. App. 1981) (noting that under Ohio law "a supplier is subject to liability for the damages proximately caused by the use of his product, in the manner and for the purpose for which it was supplied, if he fails to exercise reasonable care to give the user information which he has and which he should realize

---

[4] FCA argues that "[i]n the district court, Plaintiffs admitted that the legal viability of their claims was dependent on a finding that they (or at least their vehicles) had some relationship with FCA US."  Appellee Br. 12 n.3 (citing R. 27-1, Pl. Memo at 5, Page ID 525).  The Plaintiffs stated below that the question in the case was "whether FCA established a sufficient relationship with pre-bankruptcy Pacifica owners such that state law imposed an independent duty to address the engine cradle defect,"  R. 27-1, Pl. Memo. at 5, Page ID 525, but this statement did not abandon the Plaintiffs' claim that FCA had a duty to warn under state law as a successor with knowledge of the defect. And, in its response to FCA's motion for judgment on the pleadings, the Plaintiffs argued that "the fact remains that FCA had knowledge of the defect in Plaintiffs' vehicles and assumed responsibility for 7,000 vehicles with the same defect.  As such, the law imposes a duty upon FCA to exercise reasonable care in acknowledging defects to the public."  R. 42-1, Pl. Memo. at 5, Page ID 690 (citation omitted) (citing *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147 (Ohio 2002) (holding that "the common-law failure-to-warn claim survives the enactment of Ohio's Product Liability Act")).

would be necessary to make the use of the product safe"); *Temple v. Wean United, Inc.*, 364 N.E.2d 267, 273 (Ohio Ct. App. 1977); *see also Hutcherson v. Lauderdale Cty.*, 326 F.3d 747, 756 (6th Cir. 2003) ("[W]here a purely legal issue provides alternative grounds to uphold the judgment of the district court, we may reach the issue, provided the record permits its resolution as a matter of law.").

The Plaintiffs' claimed injury is an economic one—having to pay vehicle repair costs. R. 10, Amended Complaint at 6–7, 10–12, 21, 26, Page ID 118–19, 122–24, 133, 138 ("As a result, thousands of Chrysler Pacifica owners around the nation, many of whom have no knowledge of the defect, are left with defectively designed and/or manufactured vehicles that are dangerous and will inevitably result in financial loss due to market value or the cost of repair estimated to range (in today's dollars) at between $2,000–$5,000 to keep their vehicles safely operational."). But on these allegations, there is no causal link between FCA warning the Plaintiffs of the alleged defect post-sale and the Plaintiffs having to pay vehicle repair costs. As the court in *Burton* stated:

> The duty to warn cases typically involve a plaintiff who suffers a personal injury because someone failed to warn him about a dangerous product, and the failure to warn *proximately caused* his *subsequent* injury. The plaintiffs in this case do not allege subsequent personal injuries. . . . Instead, they seek monetary and injunctive relief based on a pre-Closing Date design flaw. Each purchased a defective vehicle manufactured by Old Carco that requires more servicing and is worth less money. New Chrysler's failure to warn them that they purchased a defective vehicle manufactured by Old Carco did not *proximately cause* their economic injury, and each plaintiff's failure to warn claim is a typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order.

492 B.R. at 405 (internal citation and quotation marks omitted). Even if FCA had warned the Plaintiffs, nothing would have changed. The only injuries the Plaintiffs allege involve the costs of the repairs, but the Plaintiffs would have needed these repairs irrespective of any warning.

The injuries were the result of the defect, not FCA's failure to warn. Thus, the Plaintiffs have failed to sufficiently allege that FCA's failure to warn *caused* their injury to survive a motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's granting of the motion for judgment on the pleadings.